RECEIVED

2009 SEP -8 AM 9: 39

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

(This form is intended to be used by persons who are not represented by an attorney. The form should NOT be used by a prisoner who is filing a complaint under the Civil Rights Act, 42 U.S.C. § 1983. A separate form is obtainable for prisoners.)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF IOWA

Franklin L Reeves
_____
_____
_____
_____

(Enter above the **FULL** name of each
plaintiff in this action)

vs.                                          COMPLAINT

Lisa Vandver Orio
Child Support Recovery Unit
_____
_____
_____

(Enter above the **FULL** name of each
defendant in this action)

**Parties**
(In item A below, place your name in the first blank and place your present address and phone number in the second blank. In the third blank write the state where your home is ("Home State"). In item B below, do the same for additional plaintiffs, if any.)

A.   Name of Plaintiff  Franklin L Reeves
     Address & Phone number  72709 130th St Maring Ja
     Home State  Ja.    515-291-8229

B.   Additional Plaintiffs (include addresses, phone numbers and home states)

     _____

     _____

     _____

     _____

(In item C below, place the **FULL** name of the defendant in the first blank place the address and phone number for the defendant in the second blank. In the third blank , write the state in which the defendant has his/her home. If the defendant is a corporation, list the location of its home office, and the state where it is incorporated, if known. If the defendant is a government agency, simply name it. In item D, do the same for additional defendants, if any.)

C.   Name of defendant  Lisa Gail Vandver-Orio
     Address & Phone number  89 Viking Ct. Ft Braggs NC.
                                                      28307
     Home State, North Carolina
     Ph # 910-366-9856
D.   Additional Defendants (include addresses, phone numbers and home states)
     DHS Recovery Unit
     P-O Box 9135
     Des Moines Ja
     50306-9223-
     Ph # 888-229-9223

Statement of Claim

(State here as briefly as possible the **FACTS** of your case.  You **MUST** state EXACTLY what
each defendant personally did, or failed to do, which resulted in harm to you.  State the date
AND place of all events.  Attach an extra sheet if necessary, and write the heading "Part II
Continued" at the top of the sheet.  Keep to the facts.  Do not give any legal arguments or cite
any cases.)

Washington Closed Case on 12-16-04
Iowa Closed the Case on 12-4-04
full Collection Closer - there was
no current Washington order.
Lisa Vanduer-Orio then took us to
Story County Distric Court - which
we agreed on 150 month 30 on
Back arerears on - 9-15-05,
Sandra Robingon - administrative Law
judge took franks disability-then said,
he was volintery underemployed and inputed
a 40 hr week job when he was disable on 11-29-99

If you know, **BRIEFLY** state what **SPECIFIC** law of constitutional provisions defendant(s)
violated.)

USC 38 section 5301. Imputed 40 week
income - added it to disability check
to compute income - Sahdra Robinson-
ALJ- state of washington -11-29-99 -
Cuseing great hardship.

Relief

(State briefly **EXACTLY** what you want the Court to do for you. Make no legal arguments. Cite no cases or statutes.)

I want the current order dismissed, case closed- and a reto On the back arrearers.

**Signature(s) of Plaintiff(s)**

Signed this ___4th___ day of ___Sept___, 20 _09_.

_____
(Signature of Plaintiff)

515-291-8229
(Area code) Phone Number

Signatures and phone numbers of additional plaintiffs, if any:

_____    _____

_____    _____

_____    _____

_____    _____







Search Law School    Search Cornell

LII / Legal Information Institute

# U.S. Code collection

TITLE 38 > PART IV > CHAPTER 53 > § 5301

## § 5301. Nonassignability and exempt status of benefits

**(a)**

**(1)** Payments of benefits due or to become due under any law administered by the Secretary shall not be assignable except to the extent specifically authorized by law, and such payments made to, or on account of, a beneficiary shall be exempt from taxation, shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary. The preceding sentence shall not apply to claims of the United States arising under such laws nor shall the exemption therein contained as to taxation extend to any property purchased in part or wholly out of such payments. The provisions of this section shall not be construed to prohibit the assignment of insurance otherwise authorized under chapter 19 of this title, or of servicemen's indemnity.

**(2)** For the purposes of this subsection, in any case where a payee of an educational assistance allowance has designated the address of an attorney-in-fact as the payee's address for the purpose of receiving a benefit check and has also executed a power of attorney giving the attorney-in-fact authority to negotiate such benefit check, such action shall be deemed to be an assignment and is prohibited.

**(3)**

**(A)** This paragraph is intended to clarify that, in any case where a beneficiary entitled to compensation, pension, or dependency and indemnity compensation enters into an agreement with another person under which agreement such other person acquires for consideration the right to receive such benefit by payment of such compensation, pension, or dependency and indemnity compensation, as the case may be, except as provided in subparagraph (B), and including deposit into a joint account from which such other person may make withdrawals, or otherwise, such agreement shall be deemed to be an assignment and is prohibited.

**(B)** Notwithstanding subparagraph (A), nothing in this paragraph is intended to prohibit a loan involving a beneficiary under the terms of which the beneficiary may use the benefit to repay such other person as long as each of the periodic payments made to repay such other person is separately and voluntarily executed by the beneficiary or is made by preauthorized electronic funds transfer pursuant to the Electronic Funds Transfers Act (15 U.S.C. 1693 et seq.).

**(C)** Any agreement or arrangement for collateral for security for an agreement that is prohibited under subparagraph (A) is also prohibited and is void from its inception.

**(b)** This section shall prohibit the collection by setoff or otherwise out of any benefits payable pursuant to any law administered by the Secretary and relating to veterans, their estates, or their dependents, of any claim of the United States or any agency thereof against

**(1)** any person other than the indebted beneficiary or the beneficiary's estate; or

**(2)** any beneficiary or the beneficiary's estate except amounts due the United States by such beneficiary or the beneficiary's estate by reason of overpayments or illegal payments made under such laws to such beneficiary or the beneficiary's estate or to the beneficiary's dependents as such. If the benefits referred to in the preceding sentence are insurance payable by reason of yearly renewable term insurance, United States Government life insurance, or National Service Life Insurance issued by the United States, the exemption provided in this section shall not apply to indebtedness existing against the particular insurance contract upon the maturity of which the claim is based, whether such indebtedness is in the form of liens to secure unpaid premiums or loans, or interest on such premiums or loans, or indebtedness arising from overpayments of dividends, refunds, loans, or other insurance benefits.

**(c)**

**(1)** Notwithstanding any other provision of this section, the Secretary may, after receiving a request under paragraph (2) of this subsection relating to a veteran, collect by offset of any compensation or pension payable to the veteran under laws administered by the Secretary the uncollected portion of the amount of any indebtedness associated with the veteran's participation in a plan prescribed in chapter 73 of title 10.

**(2)** If the Secretary concerned (as defined in section 101 (5) of title 37) has tried under section 3711 (a) of title 31 to collect an amount described in paragraph (1) of this subsection in the case of any veteran, has been unable to collect such amount, and has determined that the uncollected portion of such amount is not collectible from amounts payable by that Secretary to the veteran or that the veteran is not receiving any payment from that Secretary, that Secretary may request the Secretary to make collections in the case of such veteran as authorized in paragraph (1) of this subsection.

**(3)**

**(A)** A collection authorized by paragraph (1) of this subsection shall be conducted in accordance with the procedures prescribed in section 3716 of title 31 for administrative offset collections made after attempts to collect claims under section 3711(a) of such title.

**(B)** For the purposes of subparagraph (A) of this paragraph, as used in the second sentence of section 3716 (a) of title 31—

**(i)** the term "records of the agency" shall be considered to refer to the records of the department of the Secretary concerned; and

**(ii)** the term "agency" in clauses (3) and (4) shall be considered to refer to such department.

**(4)** Funds collected under this subsection shall be credited to the Department of Defense Military Retirement Fund under chapter 74 of title 10 or to the Retired Pay Account of the Coast Guard, as appropriate.

**(d)** Notwithstanding subsection (a) of this section, payments of benefits under laws administered by the Secretary shall not be exempt from levy under subchapter D of chapter 64 of the Internal Revenue Code of 1986 (26 U.S.C. 6331 et seq.).

**(e)** In the case of a person who—

**(1)** has been determined to be eligible to receive pension or compensation under laws administered by the Secretary but for the receipt by such person of pay pursuant to any provision of law providing retired or retirement pay to members or former members of the Armed Forces or commissioned officers of the National Oceanic and Atmospheric Administration or of the Public Health Service; and

**(2)** files a waiver of such pay in accordance with section 5305 of this title in the amount of such pension or compensation before the end of the one-year period beginning on the date such person is notified by the Secretary of such person's eligibility for such pension or compensation,

the retired or retirement pay of such person shall be exempt from taxation, as provided in subsection (a) of this section, in an amount equal to the amount of pension or compensation which would have been paid to such person but for the receipt by such person of such pay.

*LII has no control over and does not endorse any external Internet site that contains links to or references LII.*

contends that Mansell is the most applicable case from the United States Supreme Court. If Mansell did not allow a state court to consider veterans' disability pay in a community property state Mr. Murphy's disability pay should not be considered in any form as it falls under the same "exclusions" as the veterans' benefits addressed in *Mansell*.

Mr. Murphy still contends that *Rose* dealt with child support and the analysis was entirely different. Again, there is a federal statute that expressly allows assignment of military benefits for payment of child support. This is an entirely different situation.

## IN RE MARRIAGE OF ODIE L. ANDERSON, 522 N.W.2d 99 (Iowa Crt. App. 1994)

In reviewing the Anderson case, Mr. Murphy believes the *Anderson* Court's reasoning is inapplicable in his situation. *Anderson* relied upon the language in *Rose v. Rose* noting that there were two purposes underlying the federal antigarnishment statutes. *See Anderson, page 102*. The Court went on to hold that because it was "clear [that] veteran's benefits are not solely for the benefit of the veteran, but for his family as well" that it was not improper to require Mr. Anderson to pay spousal support out of his military disability pay. The problem with this is that Mansell stated specifically that military disability pay cannot be treated as community property in a divorce case. If this is so, how can we use it to require Mr. Murphy to pay spousal support? *Rose* dealt with child support where there was a specific statute allowing use of the veterans' disability benefits for payment of child support.

## MURPHY V. MURPHY, 787 S.W.2d 684 (Ark. Sup. Ct. 1990)

The holding in Murphy is puzzling. It does not appear to Mr. Murphy to "match" the court's conclusions on the applicable federal statutory and case law.

The court notes specifically that ". . . in view of the Court's decision in Mansell the appellee here is clearly not entitled to direct payments for alimony under the FSPA because the appellant has no disposable retired pay as defined under that Act. In fact, appellant's disability benefits are not only unavailable to the appellee for alimony payments under the FSPA, but also they are subject to the strictures of the anti-attachment provision of 38 U.S.C. 3101(a) once appellant actually receives his benefits. *Murphy Id. at 685*.

It appears that the Court in *Murphy* simply chose to allow the payment of spousal support despite its acknowledgement of the law. If the Mrs. Murphy in this Supreme Court of Arkansas case was not entitled to direct alimony under the FSPA and the Court specifically found that her husband's disability benefits were unavailable either before or after receipt under the antigarnishment statutes, there is no other great conclusion.

IMAGE6.JPG (Resized to 88%. Show actual size)



**FOR IMMEDIATE RELEASE! (18)**

November 19, 2007

# State Courts Declare Open-Season on Veterans' Disability Compensation

Please allow me to take you on a brief journey. Try to imagine yourself as one of the many wounded military personnel (Man, or Woman) currently recovering from their combat injuries at Walter Reed or Brook Army Medical Center. Let's pretend that you are a survivor of an RPG attack that has left you disfigured and disabled. Let's say you have spent months in the hospital recuperating and in physical therapy. You have been awarded one of this nation's highest awards for your service and sacrifice, the Purple Heart Medal. Your doctors tell you that you will be in some pain and on medications for the rest of your life, and that your disfiguring scars will fade a little with time. Your body has become immune to your pain medications, and you are forced to just 'deal with it'. Sleep is the only relief you have. When you can finally fall asleep, your body jerks violently waking you back up. Every time you close your eyes it is as if you were reliving/replaying the entire RPG explosion in your dreams over and over again. Your subconscious mind tries to convince yourself that 'this time' you will somehow jump out of the way of the rocket and not be hurt. But, when you are startled awake, the pain and discomfort reveals the ugly reality. On one hand you are extremely grateful to be alive, and on the other hand, you question your survival. You don't yet understand that your wounds are both physical and emotional and that the physical and mental scars from your near-death experience are very deep and will follow you throughout your life until the day you die.

Now, allow me to elaborate even further. Let's say your injuries qualify you for service-connected disability compensation from the Department of Veterans Affairs, and you receive a tax-exempt monthly disability check from the VA. And let's say, in spite of your scars and disabilities, you are fortunate enough to find a mate and marry. Now, imagine your marriage decaying over several years to the point of divorce because your spouse no longer wishes to live with your jumping in your sleep. You are totally disabled and unable to work, and your only source of livelihood is your VA disability check. You provide the divorce court with a sworn financial statement that substantiates that your VA check is your only cash source and you have no other assets. The next thing you know, a civil court judge has awarded half of your VA disability compensation to your able-body non-military ex-spouse in the form of alimony, or spousal support. Your attorney advises you that there is nothing you can do about it, and withdraws from your case. You can't afford to retain another lawyer, so you are faced with four basic decisions;

(1). Just shut up and pay the court order, or go to jail and then pay the order anyway.

(2). Find a pro-bono attorney to file an Appeal and fight for your earned veteran's disability compensation.

(3). Leave the state and never return.

(4). Blow your brains out.

Sound far fetched? Not at all, in fact similar scenarios unfold in divorce courts nationwide everyday. Self-serving attorneys and judges have found ways to circumvent federal laws that prohibit third party awards

of veteran's benefits. The VA and our politicians turn a blind eye towards these civil courts as they wrongly interpret veteran's disability compensation as a divisible marital asset.

Operation Firing For Effect (OFFE) is currently monitoring over two dozen cases in several states where disabled veterans are forced to pay alimony from their VA disability compensation or go to jail for contempt. In several of these cases totally disabled veterans have been jailed for not voluntarily giving up their VA disability compensation to a third party.

OFFE points to United States Code, Title 38,  section 5301(a), which reads in part; *'Payments of benefits due or to become due under any law administered by the Secretary shall not be assignable except to the extent specifically authorized by law, and such payments made to, or on account of, a beneficiary shall be exempt from taxation, shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary'.*

It is very clear what Congress intended when they wrote this legislation, and their wording leaves no gray area. Congress intended to totally protect veteran's disability compensation from the greedy hands of anyone using these funds as a divisible consideration in any/all court proceedings in the land. Congress wanted to insure that a person that was injured in the line of duty was the sole recipient of their earned disability compensation, and that these tax-exempt funds not be diverted to an ineligible able-body non-military person.

Last Friday, November 17, 2007, Vietnam combat disabled veteran Calvin Murphy was ordered by Michigan Circuit Court Judge, James Batzer to pay his ex-spouse $800 a month until she remarries from his disability compensation, and Murphy was also ordered to pay his ex-wife's attorney fees amounting to an additional $3000. According to sworn testimony from the former Mrs. Murphy, she could no longer live with Mr. Murphy and his combat-induced Post Traumatic Stress Disorder. She simply did not want to live with him any more. There were no claims of spousal abuse or infidelity made by Mrs. Murphy, and the Murphy's have no minor children. At one point, attorney Connie Krusniak argued that Mrs. Murphy has suffered from Mr. Murphy's PTSD bouts just as much as her husband has, and therefore she was entitle to a portion of Mr. Murphy's VA disability compensation. Mr. Calvin Murphy was accused in open court of 'romanticizing' his combat military service in an attempt to avoid paying alimony. At another point in the testimony, Mr. Murphy's attorney, Wendy Divozzo provided the court with certified receipts showing that Mrs. Murphy had a gambling habit and she had lost over $24,000 at one local casino since the Murphy's had been separated. Judge Batzer refused to accept the argument that Mr. Murphy's VA disability compensation was protected by federal statute and he ordered Mr. Murphy to pay or go to jail. Calvin Murphy is appealing the decision. However, to avoid being jailed in the meantime, Murphy has to pay the court order until his Appeal is heard. So, even if he wins his Appeal in the future, he loses a great deal of his earned veteran's disability benefits now.

It doesn't take a rocket scientist to see what is happening here. Divorce lawyers and civil court judges have found a 'cash cow' in veteran's disability benefits and they are milking it dry. Many attorneys incorrectly think VA disability compensation funds are exactly the same as any other military retirement pay issue, and therefore divisible in a divorce. Many attorneys see veteran's disability compensation as a means for their client to pay their legal fees. Therefore, attorneys have a vested interest in targeting a veteran's disability compensation. Everyone wins in the divorce, *except* the disabled veteran.

Operation Firing For Effect and our team of veteran's advocates nationwide have been watching this issue develop closely for some time now. We have contacted several federal agencies including the Department of Veterans Affairs. The VA claims that they are not a law enforcement agency and cannot enforce USC Title 38 in divorce courts. When we contacted several members of Congress, we were told

that 'they' do not get involved in civil matters, nor do they interfere with the legal process in state family courts. When we contacted the Attorney General and Department of Justice, we were told judges cannot be held legally liable for their decisions; therefore, there is no violation of law. They suggested that 'if' a law had been broken, we should hire an attorney and prove it in the courts. OFFE has also contacted several national media outlets just to be told they only do stories on high profile celebrity divorces. Meanwhile, our combat wounded troops currently being nursed back to health at Walter Reed and Brook Army can take little comfort in the fact that their earned veteran's disability compensation is not as protected as Title 38 suggest.

Calvin Murphy has pledged as long as his attorney sticks by him, he will take his Appeal all the way to the highest court in Washington DC if necessary.

Operation Firing For Effect can provide supporting documentation on more than two dozen cases where a service-connected disabled veteran's VA disability compensation has been calculated into his divorce settlement as a divisible asset. This includes cases involving amputees and wheelchair bound disabled veterans. Please direct all media inquires to; jerebeery@aol.com

*[NOTE: According Michigan Circuit Court Judge, James Batzer's ruling in the Murphy divorce case, Mr. Murphy is to pay his ex-spouse $800 a month until she remarries. In other words, the former Mrs. Murphy can take another mate and as long as she doesn't get 'legally married', she and her new mate will collect $800 a month, or until Mr. Murphy dies. That makes Judge Batzer's ruling a 'life time' award.]*

*[Postscript: Recent statistics released by the Department of Veterans Affairs, the Department of Defense, and several national veteran's service organizations reveal that divorce, homelessness, and suicides among former U.S. military personnel are considerably higher than national averages within the civilian population.]*

**Jere Beery**
National Public Relations Director
Operation Firing For Effect
www.offe2008.org

*THIS DOCUMENT HAS BEEN RECREATED #1*
*From DCS RECORDS*



STATE OF WASHINGTON
DEPARTMENT OF SOCIAL AND HEALTH SERVICES
DIVISION OF CHILD SUPPORT (DCS)

# FULL COLLECTION SERVICES CLOSURE LETTER

TO: Lisa G. Vander                    RE: **Franklin L. Reeves**

The Division of Child Support (DCS) will no longer provide full child support collection services for your case. If you receive a public assistance grant, this action does not affect the grant. The paragraphs marked in this letter apply to your case.

1. ☐ Effective _____, DCS will stop providing full support enforcement services for your case. Your child support order requires the noncustodial parent to make payments to the Washington State Support Registry (WSSR). We will continue to process and record payments received for your case. We will send you the payments. You must tell us if your address changes. We will hold returned payments for 60 days. If we do not receive a corrected address from you in that period, we will refund the payment.

2. ☐ The recipient of full child support enforcement services requested that DCS stop providing those services. We stopped providing full support enforcement services on _____. You may apply or reapply for our services.

   ■ If your dependent children receive medical assistance, we will continue to provide medical support enforcement services for these children.

3. ☒ Sixty days from the date on this letter, DCS will stop providing full support enforcement services for your case. The paragraphs marked below give you the reason.

   a. ☐ There is no longer a current child support order for your case and the past-due child support totals less than $500 or is unenforceable under Washington state law.

   b. ☒ We cannot collect child support for your case. The noncustodial parent:

      (1) ☐ Is institutionalized in a psychiatric facility.

      (2) ☐ Is in a correctional facility with no chance of parole.

      (3) ☒ Has a total and permanent medical disability.

   c. ☐ The noncustodial parent died and there is no known or available estate.

   d. ☐ We cannot establish paternity for the child involved in this case because:

      (1) ☐ The child is at least 18 years old. State and federal laws do not allow us to establish paternity.

      (2) ☐ The State of Washington decided that further efforts are not in the child's best interests.

*washington closure*
*wac 388 14A 2080*

ne noncustodial parent must make child support payments according to the terms of your child support order. When appropriate, we will mail a copy of this letter to the noncustodial parent's last-known address. We will continue to collect past-due child support owed to Washington or other states.

If you do not agree with our decision, you may ask for a hearing. If you ask for a hearing, we will inform the other party to your support order. The other party to your support order may attend and take part in the hearing. If you want a hearing, do one of the following within 20 days after you receive this letter.

1.   Complete the enclosed *Objection/Request for an Adjudicative Proceeding* form. Return the completed form to the address on the form.

2.   Call us at the telephone numbers listed below and ask for a hearing. Please use the 800 telephone number for long distance calls only.

12/16/2004
**Date**

P. Ward

Authorized Representative
DIVISION OF CHILD SUPPORT

DIVISION OF CHILD SUPPORT
POB 11520
TACOMA, WA. 98411-5520
866-243-4449 or 253-922-0454

TTY/TDD services available for the speech or hearing impaired.
Visit our web site at: www.wa.gov/dshs/dcs

*She case was also closed in Iowa on 12/4/04, but they will not let me have a copy + we asked for a extention As I could Superoa these papers.*

*But Here is a Court Order*

*for 150 Current + 30⁰⁰ arrearage that ye agree upon due to franks disability exemption & will cause*

person, because of race, color, national origin, creed, religion, sex, age, or disability, shall be discriminated against in employment, services, any aspect of the program's activities. This form is available in alternative formats upon request.

reply, refer to:
Case #: 1078896

COLLECTION SERVICES CLOSURE LETTER
18-370 (REV. 09/1999)

*Hardship - Lisa Orio 150⁰⁰ payment from the V.A Administration is direct deposit each month.*

Tacoma Wa. 58411 - 5520

Department of Social + Health
D# 1078896                    Services

I am writting regesting
a retro on my back
arrears, I wrote 2-10-06
regetting a retro and
haven't recieved no responds.
We were doing a modifi-
cation in 99. (DHHS) They
took my disability check
726⁰⁰ & imputed a 40 hrs
week income at minim
wage + add it to my
disability check. I toold
them I was awaiting a
disability rating decition
but they said my not
being able to work was
not credible + imputed
income along with my
check.

I finally recieved
a decition in April of 2002
and they retroed it back
to Oct. 30th 98. I was
only getting 726⁰⁰ that
entire time and I've been →

unable to pay, + I ful
they shouldn't have had
income imputed when I
was unable to work and
found to be 100% disable,
since Oct 3, 98 and I'm
asking for a retro on
my arrears.

Thank You Very
Much,

Franklin L Reeves

PO BOX 9135
DES MOINES IA 50306-9135

Sa + Tray Orio Dettling
89 Viking Ct
Ft. Bragg NC 28307

Department of Child Support

Docket # DRCV04966 - Current payment
C.S.C - 398912    30°° Arreares    150°° V.A
                  total 180°° month-

I am not accepting the
Notice to Review and Adjust
my Child Support Obligation-
through Department of Human services.
Our Current order goes
through Iowa district Court
form Story Court for 150°°
which the V.A pays directly
to Lisa, Orio, Vanover, Mullins -
and 30°° on Arreares.

Our income has only went
down due to Corey + Micheal
turning 18 years old so they
are no longer eliegable for
them so I has dropped.

The V.A allows 66.°° addition
for my Children - I am paying
150- Current- 30- amonth on
arreares- I Can't afford
any more without Causing

extream hardship due to
I am 100% V.A service
Connected disable. I recieve 1
Check a month I never have
enough to make it the last
week of each month already
my wife Can't work due to
taking care of me + helping
with most of the things I
am unable to due- I'm tired
of being poor, I'm tired of
Lisa Oreo never letting me talk
to my daughter without taking
me back to Court for money
I dont have- I Can't afford
more than the 150⁰⁰ + 30⁰⁰
which is 180- I can't pay it.
I guess if I Can't pay it and
I go to Jail for contempt
I will no long be getting
a Check either so nobody
will recieve any not even
the 180⁰⁰ I'm fighting like
hell to pay now.
      If it any Higher amount
I Cannot pay - thats all there

is to that, I guess if
it is raised, I won't be
able to pay, so we can do
another order of contempt but
I don't have the money— If
go to Jail Lisa + Amanda won't
be even receiving the 180º, there
will be nothing for no one—
I'm doing the best I can—

US ARMY DISSABLED 100%

P.S.
Lisa Orio keeps calling
accusing me of recieve a
Check from Social Security
Disability. She stated she
found out this information
due to her being employed
there— I receive no social
Security Disability Check or
anything other than the
V. A Disability who is
sending her 130ºº month.

*Troy +*
*Lisa Orio/dehring*

| | | |
|---|---|---|
| CSC No: 398912 | **FINANCIAL STATEMENT** | Docket No: DRCV040966 |
| Party Name: ~~██████~~ | CHILD SUPPORT RECOVERY UNIT | County: STORY |
| Dependents: A.L.R. | IOWA DEPT OF HUMAN SERVICES | Worker ID: DRZA |
| | **DATE:** 03/30/2009 | Phone: 888-229-9223 |

## COMPLETE THIS FORM USING BLACK INK AND RETURN IN 10 DAYS

Because this form becomes public record, do not list any personal information such as:
► the name of employer(s), or ► addresses, or ► social security numbers, or ► telephone numbers

I am currently ........................ ☒ Employed full-time  ☐ Employed part-time  ☐ Self-employed  ☐ Unemployed

Job Title or Occupation ___E-7 Active duty___

I am paid: ........................ ☐ weekly  ☒ bi-weekly (every other week)  ☐ twice a month  ☐ monthly

My paychecks are: .......... ☒ the same each pay period  ☐ different each pay period

The amount of my last paycheck (before deductions) was: ................. $ 4,3 6 8 . 8 7

*(Attach your last three pay stubs. If self-employed attach your last three income tax returns and all schedules)*

List the amounts you pay for:
*(You may also include health or dental premiums your spouse pays for the child(ren) on this case. Attach proof of each deduction)*

Family Health Insurance ...................... $ PAID  ☐ weekly  ☐ bi-weekly  ☐ twice a month  ☐ monthly

Family Dental Insurance ...................... $ 75.17  ☐ weekly  ☐ bi-weekly  ☐ twice a month  ☐ monthly

Union Dues ......................................... $ NONE  ☐ weekly  ☐ bi-weekly  ☐ twice a month  ☐ monthly

Mandatory Pension (not 401K) ........... $ NONE  ☐ weekly  ☐ bi-weekly  ☐ twice a month  ☐ monthly

I get income from other sources (not FIP or TANF benefits) ................................................................. ☐ YES  ☐ NO

*Attach proof of other income such as pay stubs, award letters, or tax returns*

**Check All That Apply:**

☐ Another Job
$ ___,_____.___  ☐ weekly  ☐ bi-weekly  ☐ twice a month  ☐ monthly

☐ Unemployment
$ ___,_____.___  ☐ weekly  ☐ bi-weekly  ☐ twice a month  ☐ monthly

☐ Worker's Compensation
$ ___,_____.___  ☐ weekly  ☐ bi-weekly  ☐ twice a month  ☐ monthly

☐ Pension/Retirement
$ ___,_____.___  ☐ weekly  ☐ bi-weekly  ☐ twice a month  ☐ monthly

☐ Social Security Disability (SSD) or Social Security Retirement (SSR)
$ ___,_____.___  monthly and benefits are for: ☐ myself  ☐ my spouse  ☐ my children

☐ Supplemental Security Income (SSI)
$ ___,_____.___  monthly

☐ Veteran's Benefits
$ ___,_____.___  monthly

☒ Other (please specify) ___Child Support for Amanda Reeves___
$ ___,_ 8 0 . 0 0  ☐ weekly  ☐ bi-weekly  ☐ twice a month  ☒ monthly

470-0204(Rev 9/2007)

I am currently married ......................................................................... ☒YES ☐NO

I have medical bills that are not paid by my health insurance ............................................. ☐YES ☒NO
*(For example: the cost of my own health insurance, my doctor bills, medications)*

**If yes** provide the monthly amount (CSRU cannot allow more than $25 per month).................. $ ☐☐.☐☐

You may receive credit for <u>other</u> court ordered child support or alimony you are paying.
    I pay child support for other children of mine to Iowa Collection Services Center .................... ☐YES ☒NO
    I pay child support for other children of mine to the Clerk of Court........................................ ☐YES ☒NO
    I pay child support for other children of mine to another state ................................................. ☐YES ☒NO
    I pay alimony.......................................................................................................... ☐YES ☒NO
*If you make child support or alimony payments through the clerk of court or another state, <u>attach a copy of the court order and proof of payments.</u> CSRU has record of payments made to Iowa Collection Services Center.*

You may receive credit for <u>other</u> court ordered medical support you are paying.
    I pay medical support for other children of mine to Iowa Collection Services Center .............. ☐YES ☒NO
    I pay medical support for other children of mine to the Clerk of Court....................................... ☐YES ☒NO
    I pay medical support for other children of mine to another state........................................... ☐YES ☒NO
*If you make payments through the clerk of court or another state, <u>attach a copy of the court order and proof of payments.</u> CSRU has record of payments made to Iowa Collection Services Center.*

I have <u>other</u> children with no court order for support............................................................. ☐YES ☒NO
*(Do not include stepchildren.)*

| Child's Name | Date of Birth | Child's Name | Date of Birth |
|---|---|---|---|
| _____ | _____ | _____ | _____ |

*You must provide proof such as: 1) birth certificate and marriage certificate, or 2) paternity affidavit, or 3) Court or Administrative Order.*
*CSRU has record of paternity affidavits approved by the State of Iowa.*

**FOR PAYEES (person owed support) ONLY:**
I have child care expenses while I am at work................................................................ ☐YES ☐NO
*(Attach proof of payments such as a letter from your day care provider or a copy of the Child and Dependent Care Expenses tax form.)*

If yes, list the amount ................ $ ☐,☐☐☐.☐☐    ☐weekly ☐bi-weekly ☐twice a month ☐monthly

**FOR PAYORS (person paying support) ONLY:**
The children in this case stay overnight at least 128 times per year with me........................... ☐YES ☐NO
*This must be court ordered and a copy of the order must be attached. If the court ordered equally shared physical care, Extraordinary Visitation Credit does not apply.*

**SIGNATURE**

I certify under penalty of perjury (punishment for lying) and under the laws of the State of Iowa that the above financial information I have given is true and correct. I understand that you may use this information in an action to establish or modify support for my children. I agree to accept service of all documents related to this action by first class mail. I further agree to inform your office of any change of address.

SIGN HERE: _____    DATE: 5/28/09

*Maybe you should also concider their true income which is by far more than mine.*

470-0204(Rev 9/2007)

Note: Pay increases do not stop at 10 years enlistment. In an effort to save space, the table below only goes up to 10 years enlistment. If you have Acrobat Reader installed on your computer, you can view the entire pay grade document here. It's a 681KB file, so it may take a few minutes to download if you don't have high speed internet access. This table has been updated to show the pay grade that is effective as of January 1st, 2006.

## ACTIVE DUTY MONTHLY BASIC PAY

| Pay Grade | 2 years or less | Over 2 years | Over 3 years | Over 4 years | Over 6 years | Over 8 years | Over 10 years |
|---|---|---|---|---|---|---|---|
| O-8 | 8271 | 8542 | 8722 | 8772 | 8996 | 9371 | 9458 |
| O-7 | 6873 | 7192 | 7340 | 7457 | 7670 | 7880 | 8123 |
| O-6 | 5094 | 5596 | 5963 | 5963 | 5986 | 6243 | 6277 |
| O-5 | 4247 | 4784 | 5115 | 5177 | 5384 | 5507 | 5779 |
| O-4 | 3664 | 4241 | 4524 | 4588 | 4850 | 5132 | 5482 |
| O-3 | 3221 | 3652 | 3942 | 4298 | 4503 | 4729 | 4875 |
| O-2 | 2783 | 3170 | 3651 | 3774 | 3852 | 3852 | 3852 |
| O-1 | 2416 | 2515 | 3040 | 3040 | 3040 | 3040 | 3040 |
| Pay Grade | 2 years or less | Over 2 years | Over 3 years | Over 4 years | Over 6 years | Over 8 years | Over 10 years |
| W-4 | 3329 | 3581 | 3684 | 3785 | 3959 | 4131 | 4306 |
| W-3 | 3040 | 3167 | 3296 | 3339 | 3476 | 3632 | 3837 |
| W-2 | 2674 | 2827 | 2960 | 3057 | 3141 | 3370 | 3545 |
| W-1 | 2361 | 2555 | 2684 | 2768 | 2990 | 3125 | 3244 |
| Pay Grade | 2 years or less | Over 2 years | Over 3 years | Over 4 years | Over 6 years | Over 8 years | Over 10 years |
| E-9 | - | - | - | - | - | - | 4022 |
| E-8 | - | - | - | - | - | 3293 | 3438 |
| E-7 | 2289 | 2498 | 2594 | 2721 | 2819 | 2990 | 3085 |
| E-6 | 1980 | 2178 | 2274 | 2368 | 2465 | 2685 | 2771 |
| E-5 | 1814 | 1935 | 2029 | 2125 | 2274 | 2402 | 2497 |
| Pay Grade | 2 years or less | Over 2 years | Over 3 years | Over 4 years | Over 6 years | | |
| E-4 | 1663 | 1748 | 1843 | 1936 | 2018 | | |
| E-3 | 1501 | 1596 | 1692 | 1692 | 1692 | | |
| E-2 | 1427 | 1427 | 1427 | 1427 | 1427 | | |
| E-1 | 1274 | 1274 | 1274 | 1274 | 1274 | | |
| E-1 < 4 months | 1178 | | | | | | |

*W-5, O-9, and O-10 pay grade is not shown because 20 years enlistment is required for those ranks. As stated above, this table stops at 10 years enlistment. All pay values with cents were rounded to the nearest dollar to save space.

*[Handwritten in right margin:]* Troy Orio - over 10 years - Income - Lisa Orio husband income plus 180 from US -

Copyright © 2003-2004 US Army Info Site

*[Handwritten at bottom of page:]*

Lisa Orio + Troy A. Orio-Dettling
Income information -

* Lisa Orio states she was working a Social Security Office and Claims Frank is recieving S.S. Disability - not true.

Basic Allowance for Housing for Military/Fort Bragg          Go to Page: http://fortbragghous

Related: **Fort Bragg NC M**   **Fort Bragg NC**   **Fort Bragg CA**

# Fort Bragg, NC

**FORT BRAGG HOUSING . COM - HOUSING RELOCATION INFORMATION**

Other Installations > Fort Bragg, NC > Home
RELOTARY

**POST/BASE LIFE**
- Home
- Arrival
- Inprocessing
- Housing
- BAH Rates
- Lodging
- Schools
- Units

**OFF BASE RESOURCES**
- Rental Homes
- Apartments
- Property Managers
- Homes for Sale
- Lenders
- Insurance & Investments
- Home Inspectors
- Real Estate Agent
- For Sale by Owner
- Title Companies

**ON BASE RESOURCES**
- Chaplain
- Commissary
- Educational Services
- Red Cross
- Hospital
- Post Exchange
- Post Office

**ENTERTAINMENT**
- Restaurants
- Movies
- Night Life

**ACTIVITIES**
- Family Fun
- Golf

**INFORMATION**
- Base Operator
- Post Locator
- Free Home Buyers Guide
- Income Opportunities
- Other Installations

 

**HOME**

### BAH RATES

If you qualify to live off post and choose to do so you will receive a basic allowance for housing (BAH This pay is to help cover some of the cost associated with your off post housing.

You may use your BAH to either rent or purchase a home. the BAH rates for this installation effective Jan 1, 2009 are as follows:

| Rank | BAH w/o Dependent | BAH w/ Dependent |
|------|-------------------|------------------|
| E-1 | $772 | $1018 |
| E-2 | $772 | $1018 |
| E-3 | $772 | $1018 |
| E-4 | $772 | $1018 |
| E-5 | $889 | $1089 |
| E-6 | $956 | $1274 |
| E-7 | $1023 | $1323 |
| E-8 | $1125 | $1377 |
| E-9 | $1183 | $1464 |
| W-1 | $990 | $1275 |
| W-2 | $1125 | $1345 |
| W-3 | $1188 | $1410 |
| W-4 | $1286 | $1484 |
| W-5 | $1335 | $1570 |
| O-1E | $1089 | $1333 |
| O-2E | $1170 | $1400 |
| O-3E | $1274 | $1497 |
| O-1 | $946 | $1110 |
| O-2 | $1065 | $1270 |
| O-3 | $1208 | $1407 |
| O-4 | $1328 | $1606 |
| O-5 | $1360 | $1746 |
| O-6 | $1410 | $1760 |
| O-7 | $1438 | $1781 |

*He was promoted 1323* (handwritten)

*Troy + Lisa Orio recieve 1323 00 Basic Allowance Pay monthly* (handwritten)

Career Center   Online Degrees   Search: [_____] [ Go ]

**HOME      ENLIST      RESOURCES      TRAVEL      EDUCATION      MONEY      NEWS      COMMUNITY                                  STORE**

**Basic Allowance for Subsistence (BAS)**                    ✉ EMAIL THIS STORY    🖨 PRINT THIS STORY

## Basic Allowance for Subsistence (BAS)

BAS is meant to offset costs for a member's meals. This allowance is based in the historic origins of the military in which the military provided room and board (or rations) as part of a member's pay. This allowance is not intended to offset the costs of meals for family members.

Beginning on January 1 2002, all enlisted members get full BAS, but pay for their meals (including those provided by the government). This is the culmination of the BAS Reform transition period.

Because BAS is intended to provide meals for the service member, its level is linked to the price of food. Therefore, each year it is adjusted based upon the increase of the price of food as measured by the USDA food cost index. This is why the increase to BAS will not necessarily be the same percentage as that applied to the increase in the pay table, as annual pay raises are linked to the increase of private sector wages.

**2009 BAS Rates**

**Officers**

$223.04/month

**Enlisted Members**

$323.87/month



ShareThis

**Recent Items**
» **MOS 18-F**
» **Absentee Ballot 2008**
» **2008 Army Concert Tour**
» **Army Transferability of Montgomery GI Bill Benefits to Spouses Program**
» **Scion Slam Returns to Army MWR**

**Most Popular Items**
» **Army Pay Overview**
» **Military Occupation Specialties (MOS)**
» **Can I Join the Army with a Felony?**
» **I Want Out!**
» **U.S. Army Current Uniforms**

## CHILD SUPPORT GUIDELINES WORKSHEET
Date:  8/19/2009

Case No.: _____ 398912 _____    Dependents:  ALR

Docket No.:  DRCV040966 _____

| Name:  LISAGAIL VANDVER-ORIO | Name:  FRANKLIN L. REEVES |
|---|---|
| Custodial/Other Parent's Income | Noncustodial Parent's Income |

| Method(s) Used to Determine Income | Method(s) Used to Determine Income |
|---|---|
| ( X ) Financial Statement/Verified Income | ( X ) Financial Statement/Verified Income |
| (  ) Other Sources | (  ) Other Sources |
| (  ) CSRU Median Income | (  ) CSRU Median Income |

### I. ADJUSTED NET MONTHLY INCOME COMPUTATION

| | Custodial Parent* LISAGAIL VANDVER-ORIO | Noncustodial Parent* FRANKLIN L. REEVES |
|---|---|---|
| A. Gross Monthly Income | $ 0.00 | $ 2,782.00 |
| B. Federal Income Tax | $ 0.00 | $ 0.00 |
| C. State Income Tax | $ 0.00 | $ 0.00 |
| D. Social Security Deductions | $ 0.00 | $ 0.00 |
| E. Mandatory Pension Deductions | $ 0.00 | $ 0.00 |
| F. Union Dues | $ 0.00 | $ 0.00 |
| G. Actual Medical Support Paid Pursuant to Court Order or Administrative Order in Another Order for Other Children, Not the Pending Matter | $ 0.00 | $ 0.00 |
| H. Prior Obligation of Child Support and Spouse Support Actually Paid Pursuant to Court or Administrative Order | $ 0.00 | $ 0.00 |
| I. Qualified Additional Dependent Deductions | $ 0.00 | $ 0.00 |
| J. Actual Child Care Expense While Custodial Parent* is Employed, Less the Appropriate Income Tax Credit | $ 0.00 | $ 0.00 |
| K. Preliminary Net Income for Each Parent (Line A minus lines B through J for each parent.) | $ 0.00 | $ 2,782.00 |
| L. If Ordered in this Pending matter, Cash Medical Support | $ 0.00 | $ 0.00 |
| M. Adjusted Net Monthly Income (Line K minus line L.) (Amount used to calculate the guideline amount of child support.) | $ 0.00 | $ 2,782.00 |

*In cases of joint physical care, use names only and designate both parents as custodial parents

## II. CALCULATION OF THE GUIDELINE AMOUNT OF SUPPORT (If applicable)

|  | Custodial Parent | Noncustodial Parent | Combined |
|---|---|---|---|
|  | LISAGAIL VANDVER-ORIO | FRANKLIN L. REEVES |  |
| A. Adjusted Net Monthly Income | $ 0.00 + | $ 2,782.00 = | $ 2,782.00 |
| B. Proportional Share of Income (Also used for Uncovered Medical Expenses) | 0.00 % + | 100.00 % = | 100% |
| C. Number of Children for Whom Support is Sought |  |  | 1 |
| D. Basic Support Obligation Before Health Insurance |  |  | $ 683.00 |
| E. Cost of Child(ren)'s Health Insurance Premium (Difference between family and single cost) | $ 0.00 + | $ 0.00 = | $ 0.00 |
| F. Total Obligation (Line D + combined amount line E) |  |  | $ 683.00 |
| G. Each Parent's Share of Total Obligation (Line F multiplied by line B for each parent) | $ 0.00 | $ 683.00 |  |
| H. Guideline Amount of Child Support for NCP (NCP's line G minus NCP's line E) |  | $ 683.00 |  |

### II.-a EXTRAORDINARY VISITATION CREDIT:

(Complete only if noncustodial parent's court-ordered visitation exceeds 127 overnights per year)

### II.-b VARIANCE:

Current Obligation: $ 150.00       New Obligation:       $ 683.00       Variance: 78.04 %

## III. CALCULATION OF THE JOINT (EQUALLY SHARED) PHYSICAL CARE GUIDELINE AMOUNT OF CHILD SUPPORT (If applicable)

### IV. Deviations: (See attachment)

### FRANKLIN L. REEVES

| V. RECOMMENDED AMOUNT OF CHILD SUPPORT: | $ | 683.00 per | Month |
|---|---|---|---|
| V-a. Recommended Amount of Accrued Support: | $ | NA | |
| V-b. Recommended Amount of Cash Medical Support: | $ | 0.00 per | Month |
| V-c. Reasonable Cost for Health Insurance: | $ | $139.00 | |
| V-d. Uncovered Medical Expenses: | | 100 % | |

### LISAGAIL VANDVER-ORIO

| V-f. Recommended Amount of Cash Medical Support: | $ | 0.00 per | Month |
|---|---|---|---|
| V-g. Reasonable Cost for Health Insurance: | $ | $0.00 | |
| V-h. Uncovered Medical Expenses: | | 0 % | |

### VI. Changes in Child Support Obligation as Number of Children Entitled to Support Changes

(For cases with multiple children based on present income and applicable guidelines calculation method):

470-2640 (rev 7/2009)                                                                                              2

## GUIDELINES CALCULATION COMMENTS

**Section - Method Used to Determine NCP's Income**

Income information was obtained from a confidential source.

**Section - Method Used to Determine CP's Income**

Ms. Vander-Orio's gross income was based on the financial statement provided to CSRU.

**Section - CP's Deductions**

The tax calculators were used to determine withholding taxes.

**Section - Uncovered Medical Expense**

If uncovered medical expenses for the child(ren) exceed $250.00 per year per child, up to a maximum of $800.00 per year for all children, Mr. Reeves shall pay 100% of the excess cost as provided by the Iowa Supreme Court Guidelines.

**Section - Recommended Amount of Current Support**

The state shall seek an order for $683.00 per month for 1 child.

**Section - Qualified Additional Dependent Deduction**

Ms. Vandver-Orio was given a deduction for an additional child for whom she is legally responsible.

**Section - Medical Support**

A health benefit plan that could cover the child is not available. Mr. Reeves does not have income subject to income withholding. CSRU will recommend an order for Mr. Reeves to provide a health benefit plan when it becomes available at reasonable cost. Reasonable cost is a standard set by the Iowa child support guidelines. Reasonable cost in this case is not more than $139.00 per month to add the child.



**DEPARTMENT OF VETERANS AFFAIRS
REGIONAL OFFICE
210 Walnut Street
Des Moines, Iowa  50309**

**Franklin L. Reeves**

**VA File Number
429 33 9014**

**Represented by:
AMVETS**

**Rating Decision
May 25, 2000**

## INTRODUCTION

Franklin Reeves is a Peacetime and Gulf War veteran.  He served in the Army from July 16, 1987 to November 26, 1987 and from January 12, 1989 to June 11, 1994.  He filed a claim for increased evaluation on September 29, 1999.

## DECISION

1 . Entitlement to individual unemployability is granted effective  October 30, 1998.

2 . Evaluation of L5 spondylolysis, L5-S1 spondylolisthesis, which is currently 60 percent disabling, is continued.  Entitlement to a continuance of a temporary total evaluation under 38 CFR 4.30 subsequent to August 1, 1999, is not warranted.

## EVIDENCE

- Report of telephone contact with the veteran on 08-27-99. 09-02-99, 03-03-00, and 04-03-00
- Statement from veteran received 09-29-99
- Treatment records from the Central Iowa Health Care System for the period 11-30-99 to 12-23-99
- Statement from AMVETS dated 02-25-00
- VA examination conducted 04-26-00 at the Des Moines VAMC
- Notice the veteran canceled a VA neurosurgery appointment scheduled for 05-15-00
- All prior evidence of record

## REASONS FOR DECISION

### 1. Entitlement to individual unemployability.

**FACTS:** The veteran originally claimed entitlement to individual unemployability on December 21, 1998. His claim was eventually denied by VA rating decision dated June 29, 1999, because the evidence did not show the veteran was permanently unemployable due to his service-connected conditions. A subsequent rating decision dated August 20, 1999, confirmed the prior denial of individual unemployability because the evidence again fell short of showing permanent inability to work due to his service-connected disabilities. Although the veteran did not specifically reopen the claim for entitlement to individual unemployability, a VA examination conducted in conjunction with a recent claim for extension of a temporary total rating under 38 CFR 4.30 addressed the affect of his service-connected back condition on his ability to work.

VA examination conducted April 26, 2000, revealed the veteran continues to suffer from low back pain with significant radiation to both legs. If he coughs or sneezes, his low back pain increases and may cause him to collapse. His left leg gets muscle spasms or quivers and he frequently has to shift positions. The veteran reported he cannot sit, stand, or walk any sort of distance without increased pain. The examiner noted surgery involving anterior fusion of L5/S1 with cages during April of 1999. He further noted the veteran attempted to return to work during September of 1999, scooping feet into stalls on a hog farm. According to the veteran, he worked only two or three days per week for about three months because of increased back pain while at work. He has not worked since December of 1999. The examiner noted that the veteran's work history includes only manual labor. He tried going to college but failed all of his courses and he has no other employable skills. In summary, the examiner diagnosed spondylolisthesis, post anterior fusion status with persistent low back and bilateral leg pain. He indicated the veteran might have been suited to sedentary work activities three to six months post-operatively if he had employable skills and opportunity to do so. He further stated: "I think his residual impairment is likely to be permanent and that he will more likely than not remain unemployable for work as a manual laborer. I believe this is a permanent impairment."

A review of the veteran's claims file indicates the veteran's last significant employment ended in October of 1998. A letter from Dr. Heth, Neurosurgery Resident at the Iowa City VAMC, indicates the veteran's post surgical work restrictions will significantly limit his ability to do his occupation because his only means of support is physical labor.

**ANALYSIS:** The evidence shows the veteran's service-connected back condition severely impacts his employability. As mentioned above, recent VA examination findings confirm the veteran's work history is entirely physical in nature and the examiner opined that the veteran will never again be suited for manual labor. Furthermore, the evidence shows the veteran attempted to go back to work after his surgery but he was forced to quit due to back pain despite the fact he was working only two or three days per week. With this in mind, entitlement to individual unemployability is granted from October 30, 1998, the date the veteran last engaged in gainful employment. (38 CFR 3.400(o) and (q))

## 2. Evaluation of L5 spondylolysis, L5-S1 spondylolisthesis currently evaluated as 60 percent disabling; Entitlement to continuance of a temporary total evaluation under 38 CFR 4.30 subsequent to August 1, 1999.

**FACTS:** The veteran was previously granted a 60% evaluation for his service-connected back condition based on evidence of a degenerative disc protrusion with compression or impingement of the exiting L5 roots bilaterally causing pain and numbness in the lower extremities. He underwent surgery in April of 1999 but little improvement is noted on VA examination conducted April 26, 2000. the veteran continues to complain of pain in the back radiating to the legs. He continues to use a back brace on occasion which eases some of his pain. He takes analgesic and relaxant medications which generally allow him to sleep. The radiating pain he experiences affects the buttocks and thigh and comes around the anterior aspect of his left leg and may shoot into the dorsum of the foot and the junction of one or more of his toes on the dorsum. On the right side, his little toes remains burning and he may have pain in the buttock and hamstring on that side as well. If the veteran coughs or sneezes, his low back pain increases and may cause him to collapse. His left leg gets muscle spasms or quivers and he frequently has to shift positions. The veteran cannot sit, stand, or walk any sort of distance without increased pain. Physical examination suggests the veteran has significant low back pain. He walks slowly and cautiously, using a cane. Transfer activities are done very carefully according tot he examiner. Once walking, the veteran was able to rise up on his heel and toes with increased low back pain. Deep tendon reflexes were hypoactive but symmetric at the knees and present at both ankles. There was no particular weakness of ankle and toe dorsiflexion and plantar flexion. Stretch test in the seated position showed no particular sensitivity. The low back was noted to be quite stiff. The veteran flexed about 30 degrees with encouragement and increased low back pain, bringing the fingertips to knee level. X-rays showed two metallic cages across the L5/S1 interspace with a first degree spondylolisthesis. The examiner diagnosed spondylolisthesis, status post anterior fusion, with persistent low back and bilateral leg pain. The examiner indicated the veteran will never be able to work as a manual laborer and this level of impairment is permanent.

The veteran also submitted a claim for continuance of a temporary total evaluation under 38 CFR 4.30 subsequent to August 1, 1999. A review of his claims file confirms entitlement to a temporary total evaluation following surgery for his service-connected back condition on April 9, 1999. He specifically claimed that he was prescribed a rigid back brace that immobilized his spine. He also indicated he was under a 20 pound weight restriction and was advised not to work at least until his November 8, 1999, appointment. The Iowa City VAMC indicated the November 8, 1999, appointment was rescheduled to May 15, 2000. The veteran canceled the May 15, 2000, appointment.

VA examination findings dated April 26, 2000, indicate the veteran was advised to start coming out of his back brace beginning in August of 1999. The exam findings also show the veteran is still not suited for his usual sort of work due to his low back condition.

**ANALYSIS:** The evaluation of L5 spondylolysis, L5-S1 spondylolisthesis is continued as 60 percent disabling. 38 CFR 3.321(a); 38 CFR 3.321(b)(1)

An evaluation of 60 percent is assigned under diagnostic code 5293 from August 1, 1999.

An evaluation of 60 percent is granted whenever there is pronounced intervertebral disc syndrome with persistent symptoms compatible with sciatic neuropathy, characteristic pain and demonstrable muscle spasm, absent ankle jerk, or other neurological findings appropriate to site of diseased disc and little intermittent relief.

The examination findings cited above show the veteran's service-connected low back pain continues to be severely disabling. The numbness and pain as well as hypoactive deep tendon reflexes in the lower extremities warrant continuation of the maximum 60% evaluation under diagnostic code 5293. The veteran's disability picture is not so unique as to warrant extra-schedular consideration under 38 CFR 3.321(b).

The veteran's claim for extension of a total evaluation under 38 CFR 4.30 is based on the effects of his back surgery on his ability to work. The evidence shows the veteran was unable to work due to his back condition prior to his back surgery. With this in mind, compensation at the 100% rate due to individual unemployability has been granted retroactive to October 30, 1998, the date he stopped working due to his back condition (see issue #1 above). Entitlement to extension of a total evaluation under 38 CFR 4.30 subsequent to August 1, 1999, is a moot point because compensation at the 100% rate has been granted from an earlier date due to individual unemployability.



**DEPARTMENT OF VETERANS AFFAIRS**
VA Regional Office
110 9th Avenue South
Nashville TN 37203

July 30, 2009

FRANKLIN L REEVES
72709 130TH ST
ZEARING IA 50278

In Reply Refer To: NCC/320/AK
CSS 429 33 9014
REEVES, Franklin

Dear Mr. Reeves:

This letter certifies that Franklin  Reeves was honorably discharged from the U.S. Armed Forces having served during the following period(s):

| Branch of Service | Entered on Active Duty | Discharged |
|---|---|---|
| Army | July 16, 1987 | November 26, 1987 |
| Army | January 12, 1989 | June 11, 1994 |

If you reside in the continental United States, Alaska, Hawaii, or Puerto Rico, you may contact VA by calling our toll-free number 1-800-827-1000 (for hearing impaired TDD 1-800-829-4833) or contact us online (https://iris.va.gov).

Sincerely yours,

*James E. Jerrolds*

James E. Jerrolds
Manager, National Call Center

Email us at: https://iris.va.gov

**BEFORE THE WASHINGTON STATE OFFICE OF ADMINISTRATIVE HEARINGS
FOR THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES**

| | |
|---|---|
| **In Re:** | **Docket No.:** 06-1999-D-0089 |
| | **D#:** 1078896          MAILED |
| FRANKLIN L REEVES | |
| RESPONSIBLE PARENT | **INITIAL DECISION**          NOV 2 9 1999 |
| | OLYMPIA OAH |
| LISA G MULLINS | |
| CUSTODIAN | |

**Sandra Robinson, Administrative Law Judge, conducted an administrative hearing
on September 18, 1999 and October 15, 1999 on this matter. The Appellant, Franklin
Reeves, was represented by Sara Ainsworth, attorney at law. The Custodial Parent,
Lisa Vandver, appeared and represented herself. Sarah Neyhart represented the
Department's Tacoma Office of the Division of Child Support (DCS). This matter was
continued for the submission of documents to November 5, 1999.**

## FINDINGS OF FACT

1.    This matter is brought on by the Responsible Parent's hearing request to

contest an administratively set child support obligation. At the hearing in this matter, the

Custodial Parent offered the following documents as proposed exhibits: (1) A one-page

letter from Curtis Vandver; (2) A copy of a check from Curtis Vandver's bank account made

out to Frank Reeves; and (3) A two page hand-written letter to "Amanda" dated December

10, 1998. The Responsible Parent objected to the admission of those documents. The

letter from Curtis Vandver and the copy of the paycheck are admitted as impeachment

evidence in establishing the credibility of the Responsible Parent's testimony. Those two

documents are entered as Exhibit 15, pages 1-4. The two page letter to Amanda is not

relevant in this matter and is, therefore, excluded.

2.    The Responsible Parent's testimony that his back condition prevents him from

work is not credited. The Responsible Parent's testimony on this issue is unreliable

*[handwritten margin notes:] J was waiting for my decision and I did not get it until 2000. They retroed it (disability) back to Oct 30, 98.*

*[handwritten stamp:] RECEIVED MAILROOM NOV 3 0 1999*

Form 25 - DCS - Initial Decision          Page - 1
061999D0089

DSHS/DCS
TACOMA

because it is internally inconsistent and contradictory.  The Responsible Parent testified

at the hearing on September 18, 1999 that he had been unable to maintain employment

since his back was injured in 1989.  As a result of his injury, the Responsible Parent

testified that his only employment and source of earnings in 1995 was from Flaire

Incorporated.  That testimony was later contradicted by Curtis Vandver's testimony and the

Responsible Parent's own testimony that he did in fact work for Curtis Vandver in

exchange for compensation in 1995.  The Responsible Parent also testified that since his

injury his only work experience involved intensive physical labor and heavy lifting.

However, that testimony was later contradicted by the Responsible Parent's testimony that

he worked as a communication specialist, which did not involve heavy lifting and did not

involve strenuous physical labor.

    3.   The Responsible Parent, Franklin Reeves,  and the Custodial Parent, Lisa

Vandver, are the parents of Amanda Reeves.  Amanda was born May 29, 1994, and her

Social Security is 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.

    4.   There is no evidence of record that the Responsible Parent owes a duty of

support for any children other than Amanda.

    5.   By Notice and Finding of Financial Responsibility dated September 20, 1995,

the Department established a monthly child support obligation of $367.00 owing by the

Responsible Parent for Amanda. That obligation was based on the Responsible Parent's

imputed gross monthly earnings of $1,717.00. That notice was served on the Responsible

Parent on May 28, 1996.

    6.   The Responsible Parent's child support obligation as established by the

Department's September 20, 1995 notice has not been modified.

7. The Responsible Parent filed a hearing request on May 17, 1999, objecting to the child support ordered in the Department's notice.

8. At hearing, the parties stipulated that the Responsible Parent's hearing request is his petition to modify the child support obligation ordered in the Department's September 20, 1995 notice.

9. The Appellant has a debilitating back condition, which was precipitated by an automobile accident in 1989. His back condition has been diagnosed as L5-S1 spondylosis and L5-S1 spondylolisthesis. In April 1999, the Appellant underwent surgery to correct his back problem. Although the Responsible Parent is still convalescing from his surgery, the symptoms related to his back condition persist.

10. The Responsible Parent has received Veterans Disability benefits, based on his back condition, since November 1998. In May 1999, those benefits increased temporarily to $1,989.00 to cover his period of convalescence from his back surgery. In August 1999 those benefits decreased based on the Veterans Administration's finding that the Appellant's back condition rendered him sixty percent disabled under its regulations. That decrease resulted in a reduced disability payment effective September 1, 1999 of $726.00 per month.

11. A medical report dated August 4, required that the Responsible Parent continue wearing a back brace and limited him to physical activities involving lifting of no more than twenty pounds.

12. There is no medical evidence of record that indicates the Responsible Parent's back condition prevents him from working or that advises against work activities.

13. The Responsible Parent is thirty years old and has a GED. He has work

experience as a communication specialist. He received two months of training in that area during his service in the military. That occupation did not require heavy lifting and strenuous physical labor.

14. The Responsible Parent was discharged from the military in June of 1994, and from 1995 through 1997 he held numerous jobs for short periods of time.

※ 15. There is no evidence of record of the Responsible Parent's earnings as a communication specialist while serving in the military.

*unputed income* — 16. Full-time employment at $5.70 per hour results in a gross monthly income of $988.00. Subtracting federal income tax and FICA deductions results in a net monthly income of $832.42.

*add to disability check* — 17. Full-time work at minimum wage plus the Responsible Parent's monthly disability payment of $726.00 results in a net monthly income of $1,558.42.

18. The Custodial parent has received $440.00 in public assistance during all relevant times. She held a temporary full-time job in the summer of 1999, which terminated August 1999. There is no evidence of record that the Custodial Parent's public assistance terminated and that she had since her employment ceased in August 1999.

## CONCLUSIONS OF LAW

1.1. The undersigned has jurisdiction over the persons and subject matter herein pursuant to RCW 74.20A.055 and chapter 34.12 RCW.

2.1. The issue in this case is whether the Responsible Parent's child support obligation established by the Department's September 20, 1995 notice in the amount of $376.00 per month for Amanda should be modified to reduce that monthly payment. Under WAC 388-11-140, parties to an administrative order of child support have the right

to file a petition for modification of that obligation by requesting a hearing to prospectively modify the responsible parent's obligation.  See WAC 388-11-140(1).  To do so, the petitioning party must file a written request for modification with the Department.  Id.  The administrative law judge has the authority to grant a petition for modification if there has been a substantial change of circumstances since the previous child support order was entered. See RCW 74.20A.059(1).  Support orders may be adjusted once every twenty-four months based on changes in the parents' income without showing substantially changed circumstances.  RCW 74.20A.059(4).

✸ 2.2.  In this case, the Responsible Parent requested in writing a prospective modification on the basis that his only income is a disability payment of $726.00 per month. *and it was until 2002 Oct 30 granted 100% disabled* The support obligation in this matter has not been modified since the Department's 1995 notice.  Based on the foregoing, the change in Responsible Parent's income warrants an analysis of whether and what amount the Responsible Parent's child support obligation should change.

3.1.  Child support obligations in the state of Washington are determined by applying the child support schedule to the parents' income.  That schedule was promulgated by the Washington Child Support Schedule Commission and adopted into law by the legislature in RCW 26.19.020.  A parent's income applied under the schedule is determined from his or her earning capacity.  Under Washington law, earning capacity is derived from actual earnings or imputed earnings.  See RCW 26.19.071.  Public assistance *I was unable to work* is not counted in calculating the basic child support obligation. See RCW 26.19.071(4).

✸ 3.2.  Income is imputed to a parent who is voluntarily underemployed or voluntarily unemployed.  See RCW 26.19.071(6).  By Washington statute, a parent is considered to *I was not voluntarily underemployed or voluntarily unemployed I was in a disability rating decition and awaiting a answer which I did not until 2000*



RECEIVED
OCT 09 2003
OAH - Olympia

# Washington State Child Support Schedule
## Worksheets (CSW)

Mother **Lisa G Vandver** _____   Father **Franklin L Reaves** _____

County **Division of Child Support** Superior Court Case Number **IV-D#:1078896** _____

| Children and Ages: Amanda/9 | | | | |
|---|---|---|---|---|
| **Part I:  Basic Child Support Obligation  (See Instructions, Page 5)** | | | | |
| 1.  Gross Monthly Income | | **Father** | | **Mother** |
| a.  Wages and Salaries :IMPUTED FOR MOTHER | $ | 893 | $ | UNKNOWN |
| b.  Interest and Dividend Income | $ | - | $ | - |
| c.  Business Income | $ | - | $ | - |
| d.  Spousal Maintenance Received | $ | - | $ | - |
| e.  Other Income *fathers imputed income* | $ | 863 | $ | - |
| f.  Total Gross Monthly Income (add lines 1a through 1e) | $ | 1,756 | $ | UNKNOWN |
| 2.  Monthly Deductions from Gross Income | | | | |
| a.  Income Taxes (Federal and State) | $ | 162 | $ | - |
| b.  FICA (Soc.Sec.+Medicare)/Self-Employment Taxes | $ | 68 | $ | - |
| c.  State Industrial Insurance Deductions | $ | - | $ | - |
| d.  Mandatory Union/Professional Dues | $ | - | $ | - |
| e.  Pension Plan Payments | $ | - | $ | - |
| f.  Spousal Maintenance Paid | $ | - | $ | - |
| g.  Normal Business Expenses | $ | - | $ | - |
| h.  Total Deductions from Gross Income (add lines 2a through 2g) | $ | 230 | $ | UNKNOWN |
| 3.  Monthly Net Income (line 1f minus 2h) | $ | 1,526 | $ | 1,807 |
| 4.  Combined Monthly Net Income (add father's and mother's monthly net incomes from line 3) (If combined monthly net income is less than $600, skip to line 7.) | | | $ | 3,333 |
| 5.  Basic Child Support Obligation (enter total amount in box ──▶) | | | | |
| Child #1  573      Child #4      -      Child #7      -  | | | | |
| Child #2      -      Child #5      -      Child #8      -  | | | | |
| Child #3      -      Child #6      -      Child #9      -  | | | $ | 573 |

*imputed*✱

|  | | Father | | Mother |
|---|---|---|---|---|
| 6. Proportional Share of Income (each parent's net income from line 3 divided by line 4) | | 0.458 | | 0.542 |
| 7. Each Parent's Basic Child Support Obligation (multiply each number on line 6 by line 5) (If combined net monthly income on line 4 is less than $600, enter each parent's support obligation of $25 per child. Number of children:        (Skip to line 15a and enter this amount.) | | $ 262 | $ | 311 |
| **Part II: Health Care, Day Care, and Special Child Rearing Expenses**   (See Instructions, Page 7) | | | | |
| 8. Health Care Expenses | | | | |
| a. Monthly Health Insurance Premiums Paid for Child(ren) | | $ - | $ | - |
| b. Uninsured Monthly Health Care Expenses Paid for Child(ren) | | $ - | $ | - |
| c. Total Monthly Health Care Expenses (line 8a plus 8b) | | $ - | $ | - |
| d. Combined Monthly Health Care Expenses (add father's and mother's totals from line 8c) | | $ - | | |
| e. Maximum Ordinary Monthly Health Care (multiply line 5 times .05) | | $ 29 | | |
| f. Extraordinary Monthly Health Care Expenses (line 8d minus 8e., if "0" or negative, enter "0") | | $ - | | |
| 9. Day Care and Special Child Rearing Expenses | | | | |
| a. Day Care Expenses | | $ - | $ | - |
| b. Education Expenses | | $ - | $ | - |
| c. Long Distance Transportation Expenses | | $ - | $ | - |
| d. Other Special Expenses (describe) | | $ - | $ | - |
|  | | $ - | $ | - |
|  | | $ - | $ | - |
| e. Total Day Care and Special Expenses (Add lines 9a through 9d) | | $ - | $ | - |
| 10. Combined Monthly Total Day Care and Special Expenses (add father's and mother's day care and special expenses from line 9e) | | $ - | | |
| 11. Total Extraordinary Health Care, Day Care, and Special Expenses (line 8f plus 10) | | $ - | | |
| 12. Each Parent's Obligation for Extraordinary Health Care, Day Care, and Special Expenses (multiply each number on line 6 by line 11) | $ | | $ | |
| **Part III: Gross Child Support Obligation** | | | | |
| 13. Gross Child Support Obligation (line 7 plus line 12) | | $ 262 | $ | 311 |
| **Part IV: Child Support Credits**  (See Instructions, Page 7) | | | | |
| 14. Child Support Credits | | | | |
| a. Monthly Health Care Expenses Credit | | $ - | $ | - |
| b. Day Care and Special Expenses Credit | | $ - | $ | - |
| c. Other Ordinary Expenses Credit (describe) | | | | |
|  | | $ - | $ | - |
| d. Total Support Credits (add lines 14a through 14c) | | $ - | $ | - |

WSCSS-Worksheets (CSW) 9/2000 Page 2 of 8      Continue to Next Page      3071-20000025-1073896

| Part V:  Standard Calculation/Presumptive Transfer Payment  (See Instructions, Page 8) | | | | |
|---|---|---|---|---|
| 15. Standard Calculation | Father | | Mother | |
| a. Amount from line 7 if line 4 is below $800.  Skip to Part VI. | $ | - | $ | - |
| b. Line 13 minus line 14d, if line 4 is over $600 (see below if appl.) | $ | 262 | $ | 311 |
| Limitation standards adjustments | | | | |
| c. Amount on line 15b adjusted to meet 45% net income limitation | $ | - | $ | - |
| d. Amount on line 15b adjusted to meet need standard limitation | $ | - | $ | - |
| e. Enter the lowest amount of lines 15b, 15c or 15d: | $ | 262 | $ | 311 |
| Part VI:  Additional Factors for Consideration  (See Instructions, Page 8) | | | | |
| 16. Household Assets  (List the estimated present value of all major household assets.) | Father's Household | | Mother's Household | |
| a. Real Estate | $ | - | $ | - |
| b. Stocks and Bonds | $ | - | $ | - |
| c. Vehicles | $ | - | $ | - |
| d. Boats | $ | - | $ | - |
| e. Pensions/IRA's/Bank Accounts | $ | - | $ | - |
| f. Cash | $ | - | $ | - |
| g. Insurance Plans | $ | - | $ | - |
| h. Other (describe) | $ | - | $ | - |
| | $ | - | $ | - |
| | $ | - | $ | - |
| 17. Household Debt  (List liens against household assets, extraordinary debt.) | | | | |
| | $ | - | $ | - |
| | $ | - | $ | - |
| | $ | - | $ | - |
| | $ | - | $ | - |
| | $ | - | $ | - |
| 18. Other Household Income | | | | |
| a. Income Of Current Spouse (if not the other parent of this action) | | | | |
| Name _____ | $ | - | $ | - |
| Name _____ | $ | - | $ | - |
| b. Income Of Other Adults In Household | | | | |
| Name _____ | $ | - | $ | - |
| Name _____ | $ | - | $ | - |
| c. Income Of Children (if considered extraordinary) | | | | |
| Name _____ | $ | - | $ | - |
| Name _____ | $ | - | $ | - |
| d. Income From Child Support | | | | |
| Name _____ | $ | - | $ | - |
| Name _____ | $ | - | $ | - |

WSCSS-Worksheets (CSW) 9/2000 Page 3 of 5      Continue to Next Page      3871-20000025-1078898

| Other Household Income (continued) | Father's Household | Mother's Household |
|---|---|---|
| e. Income From Assistance Programs | | |
| Program _____ | $ - | $ - |
| Program _____ | $ - | $ - |
| f. Other Income (describe) | | |
| _____ | $ - | $ - |
| _____ | $ - | $ - |
| 19. Non-Recurring Income (describe) | | |
| _____ | $ - | $ - |
| _____ | $ - | $ - |
| 20. Child Support Paid For Other Children | | |
| Name/age: | $ - | $ - |
| Name/age: | $ - | $ - |
| Name/age: | $ · | $ - |
| 21. Other Children Living In Each Household (First names and ages) | | |
| *Corey 15 years* | | |
| *Michael 13 years* | | |
| | | |
| | | |

**22. Other Factors For Consideration**

Father's income is $63.00 per month in VA disability + income imputed at

full-time minimum wage for the jurisdiction that he is residing in $5.15 per

hour. ***(imputed income)***

Mother's income is unknown. It was imputed at median net.


Father's obligation is further reduced from 170.00 to 150.00 based on the

agreement of the parties and the totality of the circumstances. Child in the

Father's home has ongoing medical expenses that the parties want to have

considered in this order. *Michael Nicolas sligts takes*

*3 different Medications daily for it*  *+ wife,*

Whole family method applied based on support for a 3 child family because

the father also supports the 2 children listed on line 20 and/or line 21.

The deviation amount based on 3 child family instead of 1 child family is

$92. The net support obligation/transfer payment is $262 - $92 = $170.

**Other Factors For Consideration (continued)**

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**Signature and Dates**

I declare, under penalty of perjury under the laws of the State of Washington, the information contained in these Worksheets is complete, true, and correct.

X _____  Father's Signature
Mother's Signature

X Sept 30 2004
Date            City                    Date            City

Judge/Reviewing Officer                 Date

This worksheet has been certified by the State of Washington Office of the Administrator for the Courts

WSCSS-Worksheets (OSW) 5/2000 Page 5 of 5    Continue to Next Page

D# 1078896

**Other Factors For Consideration (continued)**

**Signature and Dates**

I declare, under penalty of perjury under the laws of the State of Washington, the information contained in these Worksheets is complete, true, and correct.

_____    X _Franklin Reeks_
Mother's Signature                  Father's Signature

                                    X 10-01-03
_____    _____
Date          City                  Date          City

_____    _____
Judge/Reviewing Officer             Date

This worksheet has been certified by the State of Washington Office of the Administrator for the Courts

WSCSS-Worksheets (CSW) 9/2000 Page 5 of 5    Continue to Next Page

D# 1078896

# REGISTRATION STATEMENT

| | |
|---|---|
| Responding IV-D Case No. 398912 | Initiating IV-D Case No. 1078896 |
| Responding Tribunal No. IOWA | Initiating Tribunal No. 1078896 |

## I. Case Summary (Background of this Matter: Court/Administrative Actions)

| Date of Support Order | State and County Issuing Order | | Tribunal Case No. |
|---|---|---|---|
| 11-29-1999 | WA PIERCE | | 0689-D-1216 |

| Support Amount/Frequency | Date of Last Payment | Amount of Arrears | Period of Computation |
|---|---|---|---|
| $ 347.00    MONTHLY | 8·9·02 | $ 24,536.28 | 6·1·94 thru 2·13·03 |
| | | | Date          Date |

## II. Mother Information    ☐ Obligor ☒ Obligee

| Full Name and Aliases (First, Middle, Last) | Address (Street, City, State, Zip) | Employer (Name, Street, City, State, Zip) |
|---|---|---|
| LISA | LISA G VANDVER | |
| G | 12914 116TH STREET CT E | |
| VANDVER | | |
| Alias: | PUYALLUP WA 98374-5039 | |
| SSN: 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 | | |

## III. Father Information    ☒ Obligor ☐ Obligee

| Full Name and Aliases (First, Middle, Last) | Address (Street, City, State, Zip) | Employer (Name, Street, City, State, Zip) |
|---|---|---|
| FRANKLIN | FRANKLIN L REEVES | |
| L | 72709 130TH ST | |
| REEVES | | |
| Alias: | ZEARING IA 50278-8611 | |
| SSN: 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 | | |

## IV. Caretaker (If Not a Parent)    Relationship to Child(ren) _____

Full Name and Aliases    Address (Street, City, State, Zip)
(First, Middle, Last)

Alias:
SSN:

## V. Additional Case Information

This order is registered in the following states:

Description and location of any property not exempt from execution:

Other: ☒ Enforcement Only    ☐ Enforcement and Modification    ☐ Modification Only

## VI. Verification/Certification

Under penalties of perjury, all information and facts concerning the arrearage accrued under this order are true to the best of my knowledge and bel

2·13·03                                    P Ward

Date                                       ☐ Party Seeking Registration  ☒ Records Custodia

2/13/03  Pierce/WA    Kristine L Carr  DSHS/0882    1/10/0

Sworn to and Signed Before This    Notary Public, Court/Agency Official and Title    Commission E:
Date, County/State

IN THE IOWA DISTRICT COURT FOR STORY COUNTY

| | |
|---|---|
| BEFORE THE WASHINGTON STATE OFFICE OF ADMINISTRATIVE HEARINGS FOR THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, IN RE: LISA G. MULLINS, Petitioner, | NO. DRCV 040966 CSC No. 398912 |
| vs. | ORDER TO SHOW CAUSE AND DETERMINATION OF A SECURITY BOND |
| FRANKLIN L. REEVES, Respondent. | |

TO:   FRANKLIN L. REEVES,
(herein referred to as the obligor)

BE IT REMEMBERED that the above entitled matter comes on before the Court on the 26th day of *May*, 2005, upon the application of the State of Iowa, and based upon the record of the court showing that the above-named obligor has failed to pay child support as previously ordered herein. The Court finds that the time and place of said hearing of said matter should be prescribed and notice given.

IT IS THEREFORE ORDERED that the above-named obligor be and is hereby, cited and directed to appear before the presiding Judge of the District Court Of the State of Iowa in and for Story County, at the Story County Courthouse in Nevada, Iowa, on the 4TH day of *August*, 2005, at 2:30 P.m., to show cause, if any, why he/she should not be held in contempt of this Court and punished as provided by Iowa Code sections 665.4 and/or 665.5 and/or 598.23 AND/OR 598.23A for failure to, and refusal to, pay child support.

## DISTRICT COURT, STATE OF IOWA, STORY COUNTY

BEFORE THE WASHINGTON STATE )
OFFICE OF ADMINISTRATIVE )
HEARINGS FOR THE DEPARTMENT )     40966
OF SOCIAL AND HEALTH SERVICES, )   Case No. DRCV041245
IN RE:  LISA G. MULLINS, )
                                )
         Petitioner, )
                                )   **O R D E R**
vs. )
                                )
FRANKLIN L. REEVES, )
                                )
         Respondent. )

On the 8th day of September 2005, this matter came before the court for hearing on the State's request for registration of foreign support order, motion to quash subpoena duces tecum and application for rule to show cause. Lisa G. Mullins, n/k/a Lisa Vandver-Orio, appeared for hearing through telephone conference call. Respondent, Franklin Reeves, personally appeared and acted pro se. The State of Iowa appeared through Iowa Assistant Attorney General Justin D. Walker.

The court having reviewed the record and file, having heard the testimony of the parties and otherwise being duly advised in the premises enters the following findings and order.

Child support proceedings were initiated in the state of Washington which resulted in an order dated September 30, 1995 requiring respondent to pay support in the amount of $367 per month. That order was subsequently modified on at least two occasions. Respondent's current obligation is $150 per month. The State of Iowa now has requested that the support orders entered in the state of Washington be registered in this state. That application will be granted. Inasmuch as respondent's subpoena duces tecum is directed to the registration of the Washington judgment, the motion to quash will similarly be granted. The court reviewed the subpoena and finds that it seeks information which is confidential under both state and federal statutes. The court next turns to the issue of contempt.

Respondent has paid little, if any, child support since October 2003. This has been during the same time period he has had disability income of $2,505 per month. During the course of the

12/16/04 - A full Collection Service
            Clox letter - no current
                        order

hearing, respondent could give no plausible reason for not paying what is tantamount to a paltry amount of support given his monthly income level.  Consequently, the court finds that respondent is in contempt for nonpayment of child support.

**IT IS, THEREFORE, ORDERED** that the foreign support orders of the state of Washington are hereby registered in the state of Iowa.

**IT IS FURTHER ORDERED** that motion to quash subpoena duces tecum is sustained.

**IT IS FURTHER ORDERED** that respondent, Franklin L. Reeves, is in contempt for nonpayment of child support.  He is sentenced to 30 days in the Story County jail.  Mittimus, however, will be withheld and respondent given an opportunity to purge himself of the contempt by timely making his monthly child support payments for the next six months commencing with the payment due October 1, 2005.  If respondent misses any one monthly child support payment during that time frame, the state shall inform the court and an order will be entered requiring respondent to surrender to the Story County Sheriff without further hearing.

**IT IS FURTHER ORDERED** that the Child Support Recovery Unit shall credit respondent's child support arrearage with $600 for payments he has made without receiving proper credit.

_____

MICHAEL J. MOON
JUDGE OF THE SECOND JUDICIAL DISTRICT
OF THE STATE OF IOWA

Original signed and filed September 15, 2005

**Copies To:**

Lisa Vanderver-Orio
Franklin L. Reeves
Justin Walker

_Washingtons order was Stapped on 12/16/04 — there was no current order_

2

Your Honor                    8/23/05
    I talked to Washington
State Childsupport on 8/23/05.
I explained we were back
in court on Order to Show
Cause and Determination
of a Security Bond, they
Stated to me again the
Case was close, that they
were no longer enforcing
the Childsupport Order
due to the fact he met
the Federal Closure Critera
303.11 Case Closure criteria,
and the Case will be
remaining close, I Stated
Iowa was taking us to washing-
Court on Sept 8th 2005 on tons Order.
    I then explained that
lisa (CP) had written the
V.A where our disability
Check comes from in april
Sent in the court order,
applied for a apportionment,
Lisa (CP) was granted
her apportionment through
the V.A. Directly to the →

non- Costodial Parent,
   The Child Support Office
doesn't give credit for
V.A payment because they
have no control over the
V.A and their decitions and
that it goes directly to
the costodial Parent and
there is 0.00 transfer
through Child Support.
      Washington State Child
Support said I need to
bring in the evedence
(proof) that Lisa was granted
an appointionment for the
150⁰⁰ that will be sent
directly to Lisa Mullin/Vandurel
orio, (C.P) and I should
be asking in lieu of the
ChildSupport Order, that
a V.A appointionment that
was granted, and sent directly
to Lisa (CP) as efficent
and the order would be
0.00 because of no transfer
of payment and both State →

have already closed this
case due to the federal
closure law 303.11. She
said a court Order will
over rule an administrative
Order, otherwise all monees
are concidered gifts, Your
Honor, I couldn't afford
to pay my current child-
support without cutting
into our basic living
expences, I Cann't afford
this apportionment as a
gift while Childsupport Con-
tinues to bill me 150.00
month on my arriares.
Please except the 150.00
apportionment Sent directly
to Lisa (CP) as Sufficient
support and make the
order of support 0.00 Since
April 1, 2005 when the
Apportionment was granted.
and payment were Sent to Lisa.
Thank You,
Franklen L Reeves

and Your Honor I have
a son Michael that has
had brain surgery and has
seizures regularly and
takes 10 pills aday, I also
have a step son Cory
who has had serious ear
problems and just had
surgery 5/21/05 he had
a Typanoplasty Mastoidectomy
so I do have alot of bills
and responcibility with
these that are living at
home, I have enclosed proff
of this and some of our bills
not covered by insurance
for my family also.

re: 398912

## IN THE IOWA DISTRICT COURT FOR STORY COUNTY

| | |
|---|---|
| BEFORE THE WASHINGTON STATE OFFICE OF ADMINISTRATIVE HEARINGS FOR THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, IN RE: LISA G. MULLINS Petitioner, | No. DRCV040966 |
| | ORDER ON CONTEMPT |
| vs. | |
| FRANKLIN L. REEVES, Respondent. | |

**NOW**, on this 27ᵗʰ day of April, 2006, hearing was held on the issue of the Respondent's compliance with the Order for purge of contempt which was filed previously. The State of Iowa, Child Support Recovery Unit (CSRU), appeared by Assistant Attorney General, Justin D. Walker; and the Respondent, Franklin Reeves, appeared in person and by pro se ___. The child support obligee, Lisagail Vandver-Orio, appeared ___. Said matter having proceeded to trial, the Court, having heard the evidence and examined the record, **FINDS**:

1. The Court has jurisdiction over the subject matter herein and the parties hereto.

2. On the 15ᵗʰ day of September, 2005, the Respondent was found to be in contempt of court for his willful failure to pay child support as previously ordered and was sentenced to thirty (30) days in jail.

3. Imposition of the jail sentence was withheld so long as the Respondent timely made his monthly child support payments for a period of six months, beginning October 1, 2005.

4. In the hearing held in this matter on September 8, 2005, the Court ruled that the Respondent's current child support obligation would be paid directly to the obligee by the United States Veterans Administration from the benefits due to the Respondent. The Court further ruled that the Respondent would pay $30.00 per month, through the Collection Services Center, on his child support arrearage.

5. As the payments from the United States Veterans Administration are being paid directly to the obligee and not through the Collection Services Center, the Respondent's payment record does not reflect these payments.

6. The obligee has confirmed to the State of Iowa's Child Support Recovery Unit, through a letter date March 17, 2006, that she has been receiving monthly payments from the United States Veterans Administration since the hearing on September 8, 2005.  The Respondent's certified payment record with the Child Support Recovery Unit indicates that he had made the required $30.00 per month payment on his arrearage.

7. As the Respondent has complied with the Order entered herein on September 15, 2005, the finding of contempt against him should be purged.

8. The Respondent's method of payment on his child support obligation should be modified to reflect the payments being made by the United States Veterans Administration and the enforcement requirements of the Child Support Recovery Unit.

**IT IS THEREFORE ORDERED** that

1. The finding of contempt made against the Respondent on the 15th day of September, 2005, is hereby purged.

2. Beginning with the current child support payment that was due on October 1, 2005, the Respondent's current support obligation of $150.00 per month shall be paid directly to the obligee by the United States Veterans Administration from the Respondent's veteran's benefits. While the obligation is being paid directly to the obligee by the United States Veterans Administration, the Child Support Recovery Unit shall not enforce the current support obligation against the Respondent and its records shall reflect that the obligation is no longer accruing as of October 1, 2005.

3. In the event that the Respondent is no longer receiving veteran's benefits from the United States Veterans Administration, or the obligee begins to receive public assistance for the benefit of the minor child herein, the Child Support Recovery Unit shall commence enforcing the current support obligation again and shall update it's records and the Respondent's payment record accordingly.

Order
Page 3

    4.  The Child Support Recovery Unit shall continue to enforce the child support arrearage owed by the Respondent in this matter and the Respondent shall continue to pay $30.00 per month, due on the 1st day of each month, towards that arrearage until said arrearage is paid in full.  These payment shall be made by the Respondent to the Collection Services Center, CSC# 398912.

Dated this __27__ day of __April__, 2006.

_____
JUDGE, 2nd Judicial District of Iowa

Approved as to form and content:

_____       _____
Respondent                                         Respondent's Attorney

_____
State of Iowa

ORIGINAL FILED
Copies to:         Franklin Reeves, Respondent
                   Lisagail Vandver-Orio, Caretaker
                   Justin D. Walker, Assistant Attorney General

Respondent Filling resistance of
Motion To Quash Subpeona Duces Tecum:

In the Iowa District for Story Court.

No. DRCV040966

Before the Washington State Office
Hearing for the Department
of Social and Health Services,
IN RE: Lisa G Mullins / Vandver / orio
Petitioner,

v.s.
Franklin L Reeves
Respondent,


I recieved a motion To
Quash Subpeona DUCES TECUM
on 8/25/05 for a subpeona
I had served by the Polk
County Sheriff Department
on 8/11/05.
    I pray the Courts resist
the Motion To Quash Subpeona
Duces Tecum, and have
petitioner cooperate fully
with subpeona and have
such documents at deliverd
                                    →

to the Hearing on Sept.
8th, 2005 at Story County
Courthouse in Nevada Iowa.

FRANKLIN L REEVES

Franklin L Reeves
8/26/05

mailed Copys to:
Justin Walker
Attorney For CSRU

Lisa Vandver/mullins/oreo (CP)
at last Known address.

As for these documents are
relevent to this case, as
they show proof respondant
Meets the Federal Closure
Critiria Code 303.11 and
this Case has already been
Closed on 12/4/04.

2006 - on Contempt
order

Your Honor,
    I was injured in a
military accident while
I was stationed in
Germany. My disc was
destroyed and sciatic nerve
damaged while compressed in
my disc between L5 + S1.
    Enclosed you will
find a written explanation
of my conduct, enclosed
you will find a letter
of explanation, V. A rating
and reasons for decition,
dates of my rating
decition, My income, my
bills, reciepts for my
bills, and a plead for
you to understand My
situation and I pray you
not to find me contempt.
    My name is Frankin
Leo Reeves, I am 36 years
old, I have been out of the
Service since 94 a unable
to work due to an injury
sustained in the army.
→

I have been in alot of pain since the accident and have constanty been seeing the V.A Hospital regularly since my discharge in 94.

They only gave me a 10% disability rate at this time 94, even though I couldn't keep or hold a job due to my back injury. I kept requesting a re-evaluation and in 96' they raised it to 20%. I request a new evaluation, I couldn't work, I had nerve damage by now, I couldn't stand walk, sit, but just short periods, my legs bounced by themselfs, continusly and in 98' they raised me to 60% and sheeduled me for an oppuation in Iowa City in april.

They removed two disc, put in titentiam boxes, took bone marros from my hip, I still use a cane to this day.

They raised my disability to 100% then back to 60% after surgery. I requested a evaluation after surgery in 99, and recieved my rating decition in May 2002 of 100% permonate in nature, Service connected disabled Vet, Since 98 due to the fact that I was unable to hold a substancial income since my accedent, due to my Service connected accident I am & noro 100% disabled since 1998.

I had filled for a modi- fication 5-17-99 to the Wash- ington State Child Support. We had a hearing and I explained my situation, I let them Know I was waiting for a rating decition and I was currently 60% disabled, I made 726ºº month income. The judge decited I was voluntarily un-imployed & imputed a 40 hrs week job and add it to my,

to my 726.00 disability
check. The judge lowered
my support order 20.00 month,
down to 347.00, over half
my monthly check. I could
not pay this any more
than I could pay the 347.00
I was married in Dec 99.
I have a son Michael and
a step son Corey. My Wife
cover most of our bill
when she was working
full time for Iowa State
University.
     My wife lost her job
in 2002 and I had to
pay all the bills, my
wife has had a hard time
finding work and we live
in a small comunity with
out a lot of job oppertunitys.
     I only have around 25.00-
30.00 month after bills and
I have still been unable to
pay and I am sorry for this,
I do try and I pay when and
what I can.

This is just basic living expences, no lucsouryp, no cable, no cel phones, no computors, we can not afford these things with only about $25.00 after bills are paid each month.

I received a full collection service closure letter 12/16/04, stating 60 day from this date DCS will stop praviding full support enforce-ment services for this case due to, the non costodial parent has a total & pemanate disability.

I called DHSH in Washington when I recieved this letter and tried to get some information on this and asked about doing a retro on the years 98-2002 because my income was so low and I wasn't valintary unimployed. I then wrote a letter before the 60 days were up req-esting this retro.

I had not yet heard from them by 6/9/05 so I wrote again, return reipt . request a retro again.

I love my daughter, I send chrismas, easter, valentine, birthday cards to her and let her know I love her, money is one thing but I do love her even if I don't have very much money, I don't feel you should fine me contempt because I am try to do what I can, I have filled many times trying to get the support order lowered, and each time I was re-evaluated it took 3 year through the V.A paper work, each time on disbility

I am just trying to take care of my family and I keep trying to improve this situation, I have filed for a retro for the year my income was below hardship →

I had been homeless twice
before I met my wife. I
stayed in a friends camper,
then I stayed in a V.A
rehab so I could have
somewhere to stay. life
has been hard and things
have been rough but when
I've been able I did volintary
send money to child support.
   I hope washington will
take my reto. over the yrs.
98- 2002 because I only
recieved 126°° monthly and I
don't think the judge should
be able to say I can work
40 hrs week & impute it and
add to my disability check
when I was concidered 100%
disabled since 98' but didn't
recieve decition until 2002.
   I pray that you can under-
stand my situation and not
find me contempt.
            Thank you,
            Franklin Leo Reeves

8/26/09

Child Support Recovery Unit
Department of Human Services,

Case # 398912
Docket # DRCV0409066

I am using my right
to challenge, I am going
to file a court hearing
through the United States
and I am filing a federal
Civil Suit.
I believe you are
violating 38 USC 5301 also
See 42 USC 662(f)2 - a
Veterans 100% Service Connected
disability pension is non-
garnisable - exempt from creditors,
attachments, levys, Child Support,
allimony under any legal or
equitable prosess whatsoever.
It's a federal law,
the money's comes from
a federal check. I will
keep you informed and stay
in contact. Thank you

SSA-1826          ITEMIZED STATEMENT OF EARNINGS          JOB:
VERSION 1984.002 * * *    FOR SSN 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       * * *


FROM:  SOCIAL SECURITY ADMINISTRATION
       OFFICE OF CENTRAL RECORDS OPERATIONS
       BALTIMORE, MARYLAND  21235-0000

RECEIVED

MAY 17 1990

DSHS/DCS
TACOMA

FRANKLIN L REEVES                          NUMBER HOLDER NAME:
                                           FRANKLIN L REEVES



PERIOD REQUESTED   JANUARY 1995  THRU  DECEMBER 1997

| YEAR | JAN - MARCH | APRIL -JUNE | JULY - SEPT | OCT - DEC | | TOTAL |
|------|-------------|-------------|-------------|-----------|---|-------|

EMPLOYER NUMBER:  47-0777838
NORSEMAN CONSTRUCTION INC
424 W LINDEN
FREMONT  NE 68025-3368

| 1995 | - | - | - | - | $ | 6,749.75 |

EMPLOYER NUMBER:  43-1173138
FLAIRE INCORPORATED
225 N INTERSTATE DR
SIKESTON  MO 63801-8622

| 1996 | - | - | - | - | $ | 1,749.38 |

EMPLOYER NUMBER:  43-1625388
PENMAC PERSONNEL SERVICES INC
% PATTI PENNY
447 SOUTH ST
SPRINGFIELD   MO 65806-2132

| 1996 | - | - | - | - | $ | 26.00 |

EMPLOYER NUMBER:  71-0791844
WOLFE-MAC CONSTRUCTION LLC
PO BOX 2138
W HELENA AR 72390-0138

| 1996 | - | - | - | - | $ | 3,089.56 |

PAGE 001

```
SSA-1826           ITEMIZED STATEMENT OF EARNINGS        JOB:
VERSION 1984.002 * * *    FOR SSN 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      * * *   RECEIVED

                                                        MAY 1 7 1990

                                                         DSHS/LCS
  YEAR  JAN - MARCH  APRIL -JUNE  JULY - SEPT   OCT - DEC  TOTAL TACOMA


  EMPLOYER NUMBER:  71-0719245
  WLZ PARTNERSHIP INC
  19TH HOLE LIQUOR
  PO BOX 1788
  N LITTLEROCK AR 72115-1788

  1997      -          -           -          -      $    802.50

  THERE ARE NO OTHER EARNINGS RECORDED UNDER THIS SOCIAL SECURITY
  NUMBER FOR THE PERIOD(S) REQUESTED.

  EARNINGS FOR THE YEARS AFTER   1997 MAY NOT BE SHOWN, OR ONLY
  PARTIALLY SHOWN, BECAUSE THEY MAY NOT YET BE ON OUR RECORDS.

                        PAGE 002 END
```

# Your Estimated Benefits

| | | | | |
|---|---|---|---|---|
| **\*Retirement** | You have earned enough credits to qualify for benefits.  At your current earnings rate, if you stop working and start receiving benefits... | | | |
| | At age 62, your payment would be about . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ | 326 | a month |
| | If you continue working until. . . | | | |
| | your full retirement age (67 years), your payment would be about . . . . . . . . . . . | $ | 463 | a month |
| | age 70, your payment would be about . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ | 574 | a month |
| **\*Disability** | To get benefits if you become severely disabled right now, you need 20 credits of work.  You had to earn these credits in the last 10 years.  Your record shows you do not have enough credits in the right time period. | | | |
| **\*Family** | If you get retirement or disability benefits, your spouse and children also may qualify for benefits. | | | |
| **\*Survivors** | You have earned enough credits for your family to receive survivors benefits.  If you die this year, certain members of your family **may** qualify for the following benefits: | | | |
| | Your child . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ | 646 | a month |
| | Your spouse who is caring for your child . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ | 646 | a month |
| | Your spouse who reaches full retirement age . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ | 861 | a month |
| | Total family benefits cannot be more than . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ | 1,292 | a month |
| | Your spouse or minor child may be eligible for a special one-time death benefit of $255. | | | |
| **Medicare** | You have earned enough credits to qualify for Medicare at age 65.  Even if you do not retire at age 65, be sure to contact Social Security three months before your 65th birthday to enroll in Medicare. | | | |

25467

**\*Your estimated benefits are based on current law.  Congress has made changes to the law in the past and can do so at any time. The law governing benefit amounts may change because, by 2041, the payroll taxes collected will be enough to pay only about 78 percent of scheduled benefits.**

We based your benefit estimates on these facts:

Your date of birth (please verify your name on page 1 and this date of birth) . . . . . . . . . . . . . . . . . . . . . . . August 5, 1969
Your estimated taxable earnings per year after 2008 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . None
Your Social Security number (only the last four digits are shown to help prevent identity theft) . . . . . . . . XXX-XX-9014

# How Your Benefits Are Estimated

To qualify for benefits, you earn "credits" through your work — up to four each year. This year, for example, you earn one credit for each $1,090 of wages or self-employment income. When you've earned $4,360, you've earned your four credits for the year. Most people need 40 credits, earned over their working lifetime, to receive retirement benefits. For disability and survivors benefits, young people need fewer credits to be eligible.

We checked your records to see whether you have earned enough credits to qualify for benefits. If you haven't earned enough yet to qualify for any type of benefit, we can't give you a benefit estimate now. If you continue to work, we'll give you an estimate when you do qualify.

**What we assumed** — If you have enough work credits, we estimated your benefit amounts using your average earnings over your working lifetime. For 2009 and later (up to retirement age), we assumed you'll continue to work and make about the same as you did in 2007 or 2008. We also included credits we assumed you earned last year and this year.

Generally, estimates for older workers are more accurate than those for younger workers because they're based on a longer earnings history with fewer uncertainties such as earnings fluctuations and future law changes.

We can't provide your actual benefit amount until you apply for benefits. **And that amount may differ from the estimates stated above because:**
(1) Your earnings may increase or decrease in the future.
(2) After you start receiving benefits, they will be adjusted for cost-of-living increases.
(3) Your estimated benefits are based on current law.
**The law governing benefit amounts may change.**

(4) Your benefit amount may be affected by **military service, railroad employment or pensions earned through work on which you did not pay Social Security tax.** Following are two specific instances. You can also visit *www.socialsecurity.gov/mystatement* to see whether your Social Security benefit amount will be affected.

**Windfall Elimination Provision (WEP)** — If you receive a pension from employment in which you did not pay Social Security taxes and you also qualify for your own Social Security retirement or disability benefit, your Social Security benefit may be reduced, but not eliminated, by WEP. The amount of the reduction, if any, depends on your earnings and number of years in jobs in which you paid Social Security taxes, and the year you are age 62 or become disabled. To estimate WEP's effect on your Social Security benefit, visit *www.socialsecurity.gov/WEP-CHART.* In 2009, the maximum monthly reduction is $372. For more information, please see *Windfall Elimination Provision* (Publication No. 05-10045) at *www.socialsecurity.gov/WEP.*

**Government Pension Offset (GPO)** — If you receive a pension based on federal, state or local government work in which you did not pay Social Security taxes and you qualify, now or in the future, for Social Security benefits as a current or former spouse, widow or widower, you are likely to be affected by GPO. If GPO applies, your Social Security benefit will be reduced by an amount equal to two-thirds of your government pension, and could be reduced to zero. Even if your benefit is reduced to zero, you will be eligible for Medicare at age 65 on your spouse's record. To learn more, please see *Government Pension Offset* (Publication No. 05-10007) at *www.socialsecurity.gov/GPO.*

%AO 398 (Rev. 12/93)

# NOTICE OF LAWSUIT AND REQUEST FOR
# WAIVER OF SERVICE OF SUMMONS

TO: (A)  Lisa Vandver Orio

as    (B)  CP                          of (C)  ALL

A lawsuit has been commenced against you (or the entity on whose behalf you are addressed). A copy of the complaint is attached to this notice. It has been filed in the United States District Court for the
(D)  Southern                District of  Iowa
and has been assigned docket number (E)  DRCV040906
Case # 398912

This is not a formal summons or notification from the court, but rather my request that you sign and return the enclosed waiver of service in order to save the cost of serving you with a judicial summons and an additional copy of the complaint. The cost of service will be avoided if I receive a signed copy of the waiver
within (F)  30  days after the date designated below as the date on which this Notice and Request is sent. I enclose a stamped and addressed envelope (or other means of cost-free return) for your use. An extra copy of the waiver is also attached for your records.

If you comply with this request and return the signed waiver, it will be filed with the court and no summons will be served on you. The action will then proceed as if you had been served on the date the waiver is filed, except that you will not be obligated to answer the complaint before 60 days from the date designated below as the date on which this notice is sent (or before 90 days from that date if your address is not in any judicial district of the United States).

If you do not return the signed waiver within the time indicated, I will take appropriate steps to effect formal service in a manner authorized by the Federal Rules of Civil Procedure and will then, to the extent authorized by those Rules, ask the court to require you (or the party on whose behalf you are addressed) to pay the full costs of such service. In that connection, please read the statement concerning the duty of parties to waive the service of the summons, which is set forth at the foot of the waiver form.

I affirm that this request is being sent to you on behalf of the plaintiff, this          4          day of
September , 2009 .

Signature of Plaintiff's Attorney
or Unrepresented Plaintiff

A—Name of individual defendant (or name of officer or agent of corporate defendant)
B—Title, or other relationship of individual to corporate defendant
C—Name of corporate defendant, if any
D—District
E—Docket number of action
F—Addressee must be given at least 30 days (60 days if located in foreign country) in which to return waiver

AO 399                                                                        (Rev. 10/95)

# WAIVER OF SERVICE OF SUMMONS

TO: __Franklin Reeves__
       (NAME OF PLAINTIFF'S ATTORNEY OR UNREPRESENTED PLAINTIFF)

I, __Lisa gail Vandver Orio__, acknowledge receipt of your request
              (DEFENDANT NAME)

that I waive service of summons in the action of __USC 38 Section 5301__,
                                                        (CAPTION OF ACTION)

which is case number __DRCV040966  CSC#398912__ in the United States District Court
                              (DOCKET NUMBER)

for the __Southern__ District of __Iowa__.

I have also received a copy of the complaint in the action, two copies of this instrument, and a means by which I can return the signed waiver to you without cost to me.

I agree to save the cost of service of a summons and an additional copy of the complaint in this lawsuit by not requiring that I (or the entity on whose behalf I am acting) be served with judicial process in the manner provided by Rule 4.

I (or the entity on whose behalf I am acting) will retain all defenses or objections to the lawsuit or to the jurisdiction or venue of the court except for objections based on a defect in the summons or in the service of the summons.

I understand that a judgment may be entered against me (or the party on whose behalf I am acting) if an

answer or motion under Rule 12 is not served upon you within 60 days after __9-4-2009__,
                                                                              (DATE REQUEST WAS SENT)

or within 90 days after that date if the request was sent outside the United States.

__9-4-2009__                          __Fran Kln Reeves__
      (DATE)                                    (SIGNATURE)

                          Printed/Typed Name: __FRANKLIN LEO REEVES__

                          As _____ of _____
                                    (TITLE)              (CORPORATE DEFENDANT)

### Duty to Avoid Unnecessary Costs of Service of Summons

Rule 4 of the Federal Rules of Civil Procedure requires certain parties to cooperate in saving unnecessary costs of service of the summons and complaint. A defendant located in the United States who, after being notified of an action and asked by a plaintiff located in the United States to waive service of summons, fails to do so will be required to bear the cost of such service unless good cause be shown for its failure to sign and return the waiver.

It is not good cause for a failure to waive service that a party believes that the complaint is unfounded, or that the action has been brought in an improper place or in a court that lacks jurisdiction over the subject matter of the action or over its person or property. A party who waives service of the summons retains all defenses and objections (except any relating to the summons or to the service of the summons), and may later object to the jurisdiction of the court or to the place where the action has been brought.

A defendant who waives service must within the time specified on the waiver form serve on the plaintiff's attorney (or unrepresented plaintiff) a response to the complaint and must also file a signed copy of the response with the court. If the answer or motion is not served within this time, a default judgment may be taken against that defendant. By waiving service, a defendant is allowed more time to answer than if the summons had been actually served when the request for waiver of service was received.

Lisa Vaniver-Orio
89 Viking Ct
Ft. Braggs NC
28307





Franklin & Tammy Reeves
72709 130th St.
Zearing, Ia 50278

AO 398 (Rev. 12/93)

## NOTICE OF LAWSUIT AND REQUEST FOR
## WAIVER OF SERVICE OF SUMMONS

TO: (A) _Child Support Recovery Unit_

as (B) _DHS_ of (C) _ALR Case # 398912_

_Docket # DRCV040966_

A lawsuit has been commenced against you (or the entity on whose behalf you are addressed). A copy of the complaint is attached to this notice. It has been filed in the United States District Court for the

(D) _Southern_ District of _Iowa_

and has been assigned docket number (E) _DRCV040966_

    This is not a formal summons or notification from the court, but rather my request that you sign and return the enclosed waiver of service in order to save the cost of serving you with a judicial summons and an additional copy of the complaint. The cost of service will be avoided if I receive a signed copy of the waiver within (F) _30_ days after the date designated below as the date on which this Notice and Request is sent. I enclose a stamped and addressed envelope (or other means of cost-free return) for your use. An extra copy of the waiver is also attached for your records.

    If you comply with this request and return the signed waiver, it will be filed with the court and no summons will be served on you. The action will then proceed as if you had been served on the date the waiver is filed, except that you will not be obligated to answer the complaint before 60 days from the date designated below as the date on which this notice is sent (or before 90 days from that date if your address is not in any judicial district of the United States).

    If you do not return the signed waiver within the time indicated, I will take appropriate steps to effect formal service in a manner authorized by the Federal Rules of Civil Procedure and will then, to the extent authorized by those Rules, ask the court to require you (or the party on whose behalf you are addressed) to pay the full costs of such service. In that connection, please read the statement concerning the duty of parties to waive the service of the summons, which is set forth at the foot of the waiver form.

    I affirm that this request is being sent to you on behalf of the plaintiff, this _4_ day of

_Sept_ , _2009_ .

_____
Signature of Plaintiff's Attorney
or Unrepresented Plaintiff

A—Name of individual defendant (or name of officer or agent of corporate defendant)
B—Title, or other relationship of individual to corporate defendant
C—Name of corporate defendant, if any
D—District
E—Docket number of action
F—Addressee must be given at least 30 days (60 days if located in foreign country) in which to return waiver

AO 398 (Rev. 12/93)

## NOTICE OF LAWSUIT AND REQUEST FOR
## WAIVER OF SERVICE OF SUMMONS

TO: (A) *Child Support Recovery Unit*

as   (B) *Defendant DHS*  of (C) *ALF - Case # 398912*
*Docket # DRCV040966*

A lawsuit has been commenced against you (or the entity on whose behalf you are addressed). A copy of the complaint is attached to this notice. It has been filed in the United States District Court for the
(D) *Southern*                     District of *Iowa*
and has been assigned docket number (E)  *DRCV040966*

This is not a formal summons or notification from the court, but rather my request that you sign and return the enclosed waiver of service in order to save the cost of serving you with a judicial summons and an additional copy of the complaint. The cost of service will be avoided if I receive a signed copy of the waiver
within (F)  *30*  days after the date designated below as the date on which this Notice and Request is sent. I enclose a stamped and addressed envelope (or other means of cost-free return) for your use. An extra copy of the waiver is also attached for your records.

If you comply with this request and return the signed waiver, it will be filed with the court and no summons will be served on you. The action will then proceed as if you had been served on the date the waiver is filed, except that you will not be obligated to answer the complaint before 60 days from the date designated below as the date on which this notice is sent (or before 90 days from that date if your address is not in any judicial district of the United States).

If you do not return the signed waiver within the time indicated, I will take appropriate steps to effect formal service in a manner authorized by the Federal Rules of Civil Procedure and will then, to the extent authorized by those Rules, ask the court to require you (or the party on whose behalf you are addressed) to pay the full costs of such service. In that connection, please read the statement concerning the duty of parties to waive the service of the summons, which is set forth at the foot of the waiver form.

I affirm that this request is being sent to you on behalf of the plaintiff, this   *4*   day of
*September* , *2009* .

*[signature]*
Signature of Plaintiff's Attorney
or Unrepresented Plaintiff

A—Name of individual defendant (or name of officer or agent of corporate defendant)
B—Title, or other relationship of individual to corporate defendant
C—Name of corporate defendant, if any
D—District
E—Docket number of action
F—Addressee must be given at least 30 days (60 days if located in foreign country) in which to return waiver

Child Support Recorery Unit
P. O Box 9135
Des Moines Ja
        50306-9135





Franklin & Tammy Reeves
72709 130th St.
Zearing, Ia 50278

**From:** Franklin Reeves
12709 130th
Ottumwa, Sq
50278

Label 107R, January 2008

Visit us at usps.com



PRIORITY® MAIL
UNITED STATES POSTAL SERVICE

7008 1830 0002 0151 8008

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT OF THE RETURN ADDRESS, FOLD AT DOTTED LINE!

CERTIFIED MAIL™

**To:** United St
P.O. Box 9
Des Moines